**Jeffrey M. STERN, Rand Mintzer, and John Russo, Appellants,**

**v.**

**Bill E. WONZER and Linda D. Wonzer, Individually and as Next Friends and Temporary Managing Conservators of Taffidie Nickole McGough, Appellees.**

**No. 01–92–00254–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Feb. 4, 1993.

940

Larry J. Doherty, Houston, for appellants.

G. Robert Friedman, Pual N. Gold, Houston, for appellees.

Before O'CONNOR, WILSON and HEDGES, JJ.

## OPINION

O'CONNOR, Justice.

This is an appeal from a take-nothing judgment in a nonjury trial on the issue of attorney fees. Jeffrey M. Stern, Rand Mintzer, and John Russo, appellants, claim they are entitled to attorneys' fees for their representation of Taffidie McGough, a minor, based on written agreements they obtained from Taffidie's parents, Tammie McGough and James McGough. Stern, Mintzer, and Russo (collectively, Intervenors), filed an intervention for their attorneys' fees in the personal injury lawsuit filed for the death of Tiffanie Anne McGough, who drowned in an apartment complex swimming pool, and damages to Taffidie Nickole McGough, who sustained catastrophic injuries. Intervenors seek a recovery for their combined attorneys' fees before they were discharged. After a nonjury trial, the trial court entered a take-nothing judgment against Intervenors. We affirm.

### Summary of facts

On August 15, 1989, appellees Bill E. Wonzer and Linda D. Wonzer, Tammie's mother and Taffidie's grandmother, obtained a temporary restraining order in the 313th Juvenile District Court, appointing them as temporary joint managing conservators of Taffidie. Six days later, on August 21, 1989, Intervenors filed an original petition seeking damages incurred in the swimming pool incident on behalf of Tammie, in her individual, next friend, and representative capacities, and on behalf of James, in his individual, next friend, and representative capacities. This petition, cause number 89–34299, was styled *James Allen McGough, et al. v. Harry Reed & Co., et al.*, and was assigned to the 281st District Court.

Three days after that suit was filed, on August 24, 1989, the Wonzers, represented by the lawyer G. Robert Friedman, filed another petition for the McGough children, which was assigned to the 215th District Court. In addition to the other named defendants, the lawsuit named Tammie and James as defendants, alleging their negligence contributed to Tiffanie's death and Taffidie's injuries.

On October 9, 1989, the 313th Juvenile District Court entered agreed orders that allowed James and Tammie to retain their parental rights as possessory conservators, but enjoined them from interfering with

the Wonzers' power to represent Taffidie in the legal action. The Wonzers were named temporary managing conservators. On October 11, 1989, the Wonzers moved to substitute themselves as next friends for Taffidie in the first lawsuit in the 281st District Court.

On October 31, 1989, the 281st District Court entered an order consolidating the two personal injury cases, removing the parents as next friends, and appointing the Wonzers as next friends of Taffidie. From that point, the Wonzers' attorney, Friedman, represented Taffidie in cause number 89–34299.

The underlying personal injury and wrongful death case was tried to a jury in April of 1991. The defendants tendered $17,000,000 into the registry of the court as a result of a high-low settlement agreement and the verdict of the jury. Stern filed the intervention on May 16, 1990. The intervention claims were severed and tried to the court in October of 1991.

The trial court's final judgment, entered on November 15, 1991, provided that $4,583,333.33, plus accrued interest, was to be set aside for all attorneys' fees and claims for attorneys' fees. Of that amount, the judgment awarded $876,-811.56, plus accrued interest, to Friedman and Charles Neelley, an attorney who represented the mother, Tammie. John Culberson, the guardian ad litem, was awarded $150,000 in attorneys' fees.

In 12 points of error, Intervenors complain about the sufficiency of the evidence to support the findings, the lack of additional findings, the conclusions of law, and the judgment. In a single cross-point, the Wonzers complain that the trial court should have considered the certain testimony about violations of the disciplinary rules and it should have made findings of fact and conclusions of law on these points.

### Standard of review

■ Findings of fact in a case tried to the court have the same weight as a jury's answer to questions in the charge. *Simmons v. Campania Financiera Libano*, 830 S.W.2d 789, 791 (Tex.App.—Houston [1st Dist.] 1992, writ denied). The trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them. *Id.* at 792. The same standards apply in reviewing the legal or factual sufficiency of the evidence supporting a jury's answer to a jury question. *Id.*

■ In reviewing a legal insufficiency point of error, we consider only the evidence and inferences, when viewed in their most favorable light, that tend to support the finding and disregard any evidence and inferences to the contrary. *Sherman v. First Nat'l Bank*, 760 S.W.2d 240, 242 (Tex.1988); *Glockzin v. Rhea*, 760 S.W.2d 665, 666 (Tex.App.—Houston [1st Dist.] 1988, writ denied). Under such a point, we are limited to reviewing only the evidence that tends to support the finding. *Sherman*, 760 S.W.2d at 242. If there is any evidence of probative force, that is, more than a scintilla of evidence that supports the finding, we must overrule the point, and uphold the finding. *Id.*

■ In reviewing a factual insufficiency point, we examine all of the evidence, both the evidence that supports the finding and the evidence that controverts the finding. *Lofton v. Texas Brine Corp.*, 720 S.W.2d 804, 805 (Tex.1986); *Otis Elevator Co. v. Joseph*, 749 S.W.2d 920, 923 (Tex.App.—Houston [1st Dist.] 1988, no writ). Under this type of point, we can set aside the finding only if it is so against the great weight and preponderance of the evidence that it is clearly wrong and manifestly unjust. *Otis Elevator*, 749 S.W.2d at 923.

### Express agreements

In points of error one, two, five, and six, Intervenors complain of the trial court's interpretation of contracts executed by James and Tammie with Intervenors. In point of error one, they argue the trial court's conclusion there was no contract between the McGoughs and Intervenors relating to Taffidie is a conclusion of law for which there are no findings of fact. In point of error two, Intervenors complain of the trial court's finding that the contracts were the only agreements that existed between Intervenors and the McGoughs re-

garding their two children. In point of error five, Intervenors argue the trial court's findings that no agreement or contract, express or implied, supported their claims for attorneys' fees because the appointment of the Wonzers as temporary managing conservators and the Wonzers' subsequent retention of Friedman to represent them and Taffidie did not dissolve the preexisting contracts between Intervenors and the McGoughs. Intervenors also maintain, in point of error six, that the trial court erred in finding that a conflict of interest existed between Taffidie and Intervenors; that the contracts were valid at the time the agreements were executed; and that the contracts remained enforceable because Intervenors were discharged without good cause.

The trial court filed a document entitled, "Corrected Finding of Fact and Conclusions of Law." The conclusions relevant to points of error one, two, five—to the extent point five complains of the court's conclusion regarding the express contracts—and six are as follows:

1. Exhibits 603 [Tammie McGough–Stern contract] and 615 [James McGough–Russo contract] constitute the only agreements between the Intervenors and the parents of Taffidie Nickole McGough relative to retaining Intervenors to provide legal services on claims arising from the drowning of Taffidie Nickole McGough and her sister, Tiffanie Anne McGough. Said agreements are not ambiguous.

2. There were no contractual agreements between James Allen and/or Tammy McGough and Intervenors granting Intervenors powers of attorney to represent Taffidie Nickole McGough.

3. There were no contractual agreements between James Allen and/or Tammy McGough and Intervenors assigning Intervenors an interest in any recoveries obtained by Taffidie Nickole McGough.

6. This Court's order, substituting Bill and Linda Wonzer for the minor's parents as her next friends and authorizing G. Robert Friedman to pursue legal remedies on the minor's behalf, made it impossible for Intervenors to take legal action on behalf of Taffidie Nickole McGough.

8. As to the matters in controversy in this litigation, there was and is a conflict of interest between the interests of Taffidie Nickole McGough and those of her parents, James Allen and Tammy McGough.

Intervenors contest the correctness of the court's legal conclusions that no contractual agreements between the parents and Intervenors granted a power of attorney to represent Taffidie or assigned Intervenors an interest in Taffidie's recovery. Intervenors dispute the legal and factual sufficiency of the evidence in support of the trial court's conclusions in this regard.

### Tammie McGough–Stern agreement

In the agreement between Tammie McGough and Jeffrey Stern (the Stern Agreement), which was executed on August 4, 1989, Tammie employed Stern "as my attorney." The Stern Agreement does not mention that Stern was employed to represent the personal injury claims of Taffidie or the estate claims of Tiffanie. The names of the minors do not appear on the document.

The Stern Agreement consistently refers to "my attorney," "my Claim(s)," "my name," and authorizes Stern to "deposit my portion of any settlement in a Trust fund on my behalf" and assigning "to him an undivided interest in my claim(s)." The agreement has an express stipulation that if "there are more than one person undersigned, the singular shall be taken to mean the plural." The signature line shows that Tammie signed this agreement individually, not as next friend.

Intervenors direct this Court's attention to the paragraph in the Stern Agreement that states:

I, the undersigned, hereby employ JEFFREY M. STERN as my attorney to prosecute and collect any and all claims for personal injuries, property damages and/or wrongful death sustained on or about July 16, 1989. These claims are against all responsible parties and any other liable party.

**944**

The Stern Agreement also contains a power of attorney, which provides:

> I authorize my attorney to file pleadings, appear in Courts of Law, negotiate, incur expenses and to perform any and all functions which are reasonably necessary for the prosecution of my claims(s). I also give my attorney complete authority to sign my name to all releases, drafts, authorizations and all other papers in the prosecution and conclusion of my claim(s).

### James McGough–Russo agreement

The agreement between James McGough and John Russo (the Russo Agreement), which was executed on July 18, 1989, James retained Russo to represent him for "damages arising out of injuries and damages to Taffidie Nickole and Tiffanie Anne McGough which occurred in Harris County, Texas, on or about the 16th day of July, 1989." James is designated as "Clients," and Russo is designated as "Attorneys." The agreement states: "Attorneys agree to represent Clients in their cause of action for personal injuries and/or property damages to settlement or final judgment of Clients' claims against any and all parties responsible for such damages." The agreement is signed by James only in his individual capacity.

Intervenors assert the issue is whether the language in the Stern and the Russo Agreements, which do not contain a designation "as next friend," conclusively establishes that Tammie and James signed the contracts only in their individual capacities and intended to reserve any "next friend" and "personal representative of the estate" claims they possessed as a matter of law due to their status as the parents of Tiffanie and Taffidie. Intervenors maintain that at the time the contracts were executed, only the McGoughs were legally empowered to represent the estate of Tiffanie and the claims of Taffidie.

### Contract interpretation

■ In interpreting an attorney's contingent fee contract, we apply the general rules of contract law. *See Howell v. Kelly*, 534 S.W.2d 737, 739 (Tex.App.—Houston [1st Dist.] 1976, no writ). The parties stipulated, and the trial court concluded, that the agreements in question are unambiguous. Where the intention of the parties is clearly and unambiguously stated in the contract, a court gives effect to the intentions of the parties, as expressed in the contract. *Citizens Nat'l Bank v. Texas & P. Ry.*, 136 Tex. 333, 150 S.W.2d 1003, 1006 (1941); *Wadsworth Properties v. ITT Employment & Training Sys., Inc.*, 816 S.W.2d 819, 822 (Tex.App.—Houston [1st Dist.] 1991, writ denied). The objective intent, as expressed in the writing, not the subjective intent, controls. *Pfeffer v. Southern Tex. Laborers' Pension Trust Fund*, 679 S.W.2d 691, 695 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). When the language is plain and unambiguous, it must be enforced as written. *Republic Nat'l Life Ins. Co. v. Spillars*, 368 S.W.2d 92, 94 (Tex.1963).

■ No words in either the Stern Agreement or the Russo Agreement indicate James or Tammie intended to authorize Intervenors to represent Taffidie's claims or to assign Intervenors a portion of Taffidie's recovery. Stern and Russo testified they had no other agreements with Tammie and James. Mintzer testified that his authority to represent James was "unique to Russo's contract."

We hold the trial court did not err in concluding the agreements demonstrate that Tammie and James intended to contract for legal representation only in their individual capacities for their individual claims regarding the incident of July 16, 1989. We note there is a distinction between having authority to contract for legal representation of a child and actually exercising that authority.[1] There was suf-

---

1. Section 12.04 of the Texas Family Code enumerates the "rights, privileges, duties, and powers" of a parent. The parent of a child has "the *power* to represent the child in legal action and to make other decisions of substantial legal significance concerning the child." TEX.FAM.CODE ANN. § 12.04(7) (Vernon Supp.1993) (emphasis added). We do not equate the power to represent a child with the duty to obtain legal representation for a minor. In the present case, Taffidie's parents had the power to engage legal counsel to represent her claims; however, they chose not to exercise that power regarding their contracts with Intervenors.

ficient evidence before the trial court, including the express language of the contracts and evidence adduced at trial, for the court to conclude that neither Tammie nor James exercised the authority they possessed with regard to Taffidie's claims. We hold the trial court's findings are supported by the evidence.

We overrule points of error one, two, and six.

### Implied agreements

In points of error three, four, and five, Intervenors contend the trial court erred in finding there were no implied contracts between them and the McGoughs relating to Taffidie. The court's conclusions of law that are relevant to these points of error are as follows:

4. There were no implied contracts between the parents of Taffidie Nickole McGough and Intervenors granting Intervenors powers of attorney to represent Taffidie Nickole McGough.

5. There were no implied contracts between the parents of Taffidie Nickole McGough and Intervenors conveying to Intervenors an interest in any recovery obtained by or on behalf of Taffidie Nickole McGough.

Intervenors assert that an attorney-client relationship between them and Taffidie may be implied by the conduct of the parties. They argue both the McGoughs and the Wonzers accepted the apparent authority of Intervenors to represent Taffidie, in that the Wonzers moved the trial court to remove James and Tammie from their representation of Taffidie as next friends.

Tammie testified at trial that she had no intention of employing Stern to represent Taffidie or the estate of Tiffanie; that such representation was never mentioned to her; and that at the time she entered into the Stern Agreement, she believed Friedman already represented Taffidie. Stern testified that all of the agreements between him and Tammie were contained within the four corners of his retainer agreement with her. He repeatedly testified that the written agreement was the only contract he had with Tammie. Russo also testified that his entire agreement with James was contained within the four corners of his retainer agreement with James. Mintzer testified that his only authority was derivative of Russo's agreement with James.

Our review of the record shows there is no pleading by Intervenors to support a claim in implied contract. Nor was any evidence sufficient to put the Wonzers on notice that Intervenors sought recovery on an implied contract theory offered at trial. *See* TEX.R.CIV.P. 67. The first mention of the implied contract theory of recovery was in final argument before the trial court. The Wonzers had a right to assume they would be called upon only to defend Intervenors' suit on the express agreements. *Bobby Smith Brokerage, Inc. v. Bones*, 741 S.W.2d 621, 622 (Tex.App.—Fort Worth 1987, no writ).

We hold that Intervenors' failure to plead implied contract as a theory of recovery precluded them from raising the issue on appeal. *Id.*

We overrule points of error three, four, and five.

### Court's conclusions of law

In points of error seven, eight, and eleven, Intervenors attack the trial court's findings of fact and conclusions of law. The Wonzers also complain by cross-point of the absence of findings of fact and conclusions of law.

### Irreconcilable conflict

In point of error seven, Intervenors assert the trial court's conclusions of law numbers six, nine, and 10 are in irreconcilable conflict, thus "destroying" the judgment. Point of error seven is directed at the following conclusions:

6. This Court's order, substituting Bill and Linda Wonzer for the minor's parents as her next friends and authorizing G. Robert Friedman to pursue legal remedies on the minor's behalf, made it impossible for Intervenors to take legal action on behalf of Taffidie Nickole McGough.

9. As to the matters in controversy in this litigation, there was and is a conflict of interest between Taffidie Nickole

McGough and those of next friends(s) Bill and Linda Wonzer.

10. The Court has the inherent power to protect the "best interests" of the minor, Taffidie Nickole McGough, which it exercised in limiting the total attorney's fee and expenses that may be recovered out of Taffidie's recovery to thirty-three and one-third percent (33⅓%) of her total recovery.

The trial court's findings numbers six and nine address two types of conflicts of interest. The conflict of interest between Tammie and James and Taffidie resulted from the fault of the parents in contributing to Taffidie's injuries. Tammie and James were named as defendants in the consolidated suit for personal injuries.

The Wonzers asserted claims to recover for the value of their services rendered for Taffidie's medical care. Because of these claims, the trial court could have reasonably believed that the interests of the Wonzers and Taffidie could be adverse. Accordingly, the trial court appointed John Culberson as guardian ad litem, TEX. R.CIV.P. 173, and severed the Wonzers' claims.

Although challenged in point of error seven, conclusion of law number 10, which limits attorneys' fees to one-third of the settlement proceeds, does not appear to conflict with the other conclusions addressed by Intervenors in point of error seven. Nor did Intervenors direct this Court's attention to how conclusion number seven conflicts with conclusion numbers six and nine. We hold conclusions six, nine, and 10 are not in irreconcilable conflict.

We overrule point of error seven.

### Insufficient findings

In point of error 11, Intervenors complain of the trial court's failure to include findings of fact and conclusions of law regarding Intervenors' violations of disciplinary rules. In point of error 11, Intervenors contend the trial court erred when it entered its findings of fact and conclusions of law in support of its judgment by failing to include findings of fact and conclusions of law regarding the violations of disciplinary rules by Intervenors and the application of the disciplinary rules to the facts of this case.

A trial judge is required to make findings only on ultimate, controlling, and material issues. *Phillips v. Parrish*, 814 S.W.2d 501, 506 (Tex.App.—Houston [1st Dist.] 1991, writ denied). A trial court is not required to make additional findings if they are not necessary for its decision or for appellate court review. *Eikenhorst v. Eikenhorst*, 746 S.W.2d 882, 888–89 (Tex. App.—Houston [1st Dist.] 1988, no writ).

Our review of the record demonstrates that the dispositive issues for the trial court's determination were (1) whether Intervenors had a binding contract that entitled them to a portion of Taffidie's recovery, and, if so, (2) whether those contracts were nullified or frustrated by subsequent judicial orders. The first five findings or conclusions address whether Intervenors had valid agreements to represent Taffidie. The trial court concluded: (1) the Stern and Russo contracts were the only agreements, and there were no implied contracts; (2) the contracts were not ambiguous; (3) the contracts did not grant Stern and Russo powers of attorney to represent Taffidie; and (4) the contracts did not assign Intervenors any interest in any recovery obtained by Taffidie. In summary, the trial court concluded Intervenors had no contract to represent to Taffidie.

The trial court's conclusions are dispositive of the two controlling issues in the case. No additional findings or conclusions were necessary or required. *Dura–Stilts Co. v. Zachry*, 697 S.W.2d 658, 661 (Tex. App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.).

In their brief, under point of error eight, Intervenors argue the trial court abused its discretion when it entered its judgment based upon findings of fact and conclusions of law for which there is legally and factually insufficient evidence and for failing to apply correct legal standards. We have addressed Intervenors' sufficiency argument under their points of error that complain of specific conclusions by the trial court.

Intervenors also maintain the trial court erred in limiting apportionment of attorneys' fees to one-third of the judgment and expressly disallowing Intervenors from recovering attorneys' fees from that one-third. In this regard, the court's conclusion number 10 states:

10. The Court has the inherent power to protect the "best interests" of the minor, Taffidie Nickole McGough, which it exercised in limiting the total attorney's fee and expenses that may be recovered out of Taffidie's recovery to thirty-three and one-third percent (33⅓%) of her total recovery.

As discussed in this opinion, the Wonzers, as Taffidie's temporary managing conservators, entered into a contract with Friedman to represent Taffidie's claims. As next friends, they had the same rights as guardians. TEX.R.CIV.P. 44. At the time the Wonzers engaged Friedman to represent Taffidie, she had no legal guardian. In this regard, section 233 of the Texas Probate Code provides:

Every personal representative of an estate shall use ordinary diligence to collect all claims and debts due to the estate and to recover possession of all property of the estate to which its owners have claim or title, provided there is a reasonable prospect of collecting such claims or of recovering such property.... *Such representatives may enter into contract to convey, or may convey, a contingent interest in any property sought to be recovered, not exceeding one-third thereof,* or services of attorneys and incidental expenses, subject only to approval of the court in which the estate is being administered.

TEX.PROB.CODE ANN. § 233 (Vernon 1980) (emphasis added). We read rule 44 and section 233 to support the portion of the trial court's judgment that limits recovery of attorney's fees to one-third.

We overrule points of error eight and 11.

### Conditional cross-point

The Wonzers assert in their cross-point that the trial court erred in not making requested findings of fact and conclusions of law on Intervenors' violations of the disciplinary rules, because evidence offered at trial proved as a matter of law, or in the alternative, by a preponderance of the evidence, that the manner in which Intervenors procured their contracts rendered the contracts void as a matter of public policy. The Wonzers urge this cross-point only if this Court holds Intervenors had valid agreements containing powers of attorney to represent Taffidie. Because we have already held that Intervenors had no agreements to represent Taffidie, we decline to reach this cross-point.

### Disciplinary rules

In points of error nine and 10, Intervenors assert the trial court should not have considered evidence and argument about Intervenors' violations of the disciplinary rules. In particular, Intervenors point to the argument of the Wonzers' counsel that the disciplinary violations go to "the heart of this litigation." The decision whether to admit evidence is a matter within the sound discretion of the trial court. *Champlin Oil & Refining Co. v. Chastain,* 403 S.W.2d 376, 389 (Tex.1965).

For the exclusion of evidence to constitute reversible error, the complaining party must show (1) that the trial court committed error, and (2) that the error was reasonably calculated to cause and probably did cause rendition of an improper judgment. *McCraw v. Maris,* 828 S.W.2d 756, 757 (Tex.1992); *Castro v. Sebesta,* 808 S.W.2d 189, 192 (Tex.App.—Houston [1st Dist.] 1991, no writ). It is not necessary for the complaining party to prove that 'but for' the exclusion of evidence, a different judgment would necessarily have resulted. *McCraw v. Maris,* 828 S.W.2d at 758; *Castro,* 808 S.W.2d at 192. The complaining party is only required to show that the exclusion of evidence probably resulted in the rendition of an improper judgment. *McCraw,* 828 S.W.2d at 758; *Castro,* 808 S.W.2d at 192; TEX.R.APP.P. 81(b)(1).

A trial court may use the disciplinary rules that govern attorney conduct to determine whether a contract is contrary to public policy. *Polland v. Lehmann,* 832 S.W.2d 729, 736 (Tex.App.—Houston [1st Dist.] 1992, writ denied). Once evidence

has been properly admitted, an attorney may argue reasonable inferences drawn from such evidence. *See Standard Fire Ins. Co. v. Reese,* 584 S.W.2d 835, 837 (Tex.1979); TEX.R.CIV.P. 269(e). We hold the trial court did not err in admitting evidence and considering argument about Intervenors' violations of the disciplinary rules.

We overrule points of error nine and 10.

### Apportionment of the judgment

In point of error 12, Intervenors argue they are entitled to the one-third of the judgment set aside for attorneys' fees, as they agreed to reform their contracts to accept only one-third of Taffidie's recovery. Intervenors note that by accepting one-third of Taffidie's recovery, they will not deplete the remainder of the settlement funds. This Court has failed to find any grounds for Intervenors to recover any funds awarded Taffidie.

We overrule point of error 12.