The COMMISSION OF CONTRACTS OF THE GENERAL EXECUTIVE COMMITTEE OF THE PETROLEUM WORKERS UNION OF THE REPUBLIC OF MEXICO, and the Petroleum Workers Union of the Republic of Mexico, Appellants,

v.

ARRIBA, LIMITED, Appellee.

No. 01–93–00236–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 25, 1994.

Bertrand C. Moser, Carlos A. Ryerson, Houston, for appellant.

Mike O'Brien, John M. O'Quinn, Houston, for appellees.

Before O'CONNOR, WILSON and HEDGES, JJ.

## OPINION

O'CONNOR, Justice.

The issue in this case is the propriety of the service on foreign citizens. This is an appeal from a bill of review action challenging a default judgment, which with interest, now amounts to about $500,000,000. We reverse and remand for a new trial.

The appellants here (the plaintiffs in the bill of review below) are: the Commission of Contracts of the General Executive Committee of the Petroleum Workers Union of the Republic of Mexico, and the Petroleum Workers Union of the Republic of Mexico. The Petroleum Workers Union of the Republic of Mexico (the Union) is an association that represents the workers of Pemex, the Mexican national oil company. The association that represents the workers of Pemex, the Mexican national oil company. The Commission of Contracts of the General Executive Committee of the Petroleum Workers Union of the Republic of Mexico (the Commission) is a Mexican civil society of Union members operating as a construction company, which was authorized during the relevant time period to enter into commercial contracts on behalf of the Union. The appellee (the defendant in the bill of review), is Arriba, Ltd., a Bahamian corporation whose sole stockholders are David Black and Bill Flanigan.

On October 1, 1984, Arriba and the Commission signed a contract for the sale and purchase of six million barrels of residual oil. On June 14, 1985, Arriba filed suit in Harris County against the Union, the Commission, and four individuals, alleging that the appellees had breached the 1984 contract. The Union and the Commission were served with citation under the Texas Long–Arm Jurisdiction Statute, Tex.Civ.Prac. & Rem.Code §§ 17.041–17.045 (Vernon 1986). None of the appellees filed an answer, and on April 23, 1986, the trial court signed a default judgment against all appellees. The 1986 judgment against the Union and the Commission was for $92,000,000.

On October 17, 1987, Arriba released the 1986 judgment as part of a settlement. The release was conditioned on a joint venture agreement entered into between Arriba and Comater, S. DE R.L., who was acting as the agent for the Union, the Commission, and Pemex.[1]

On February 22, 1989, Arriba filed suit in Harris County against the Union, the Commission, and four individuals.[2] Arriba alleged that the Union and the Commission breached the 1987 joint venture agreement and that the 1986 judgment had been released without consideration or for consideration that had failed. Arriba sued for breach of contract and for cancelation of the release of the 1986 judgment.

Arriba served the Union and the Commission with citation through the Secretary of State under the long-arm statute. On February 22, 1989, the Harris County District Clerk issued citations for the Union and the Commission. On February 23, 1989, a deputy from the Travis County Sheriff's Department served the Secretary of State's office with citations for the Union and the Commission. On March 2, 1989, Arriba filed the returns served by Travis County Sheriff's Department with the Harris County District Clerk. On April 4, 1989, Arriba filed two certificates from the Secretary of State that stated the Secretary of State had forwarded copies of the citations and petitions to the Union and the Commission.

On April 4, 1989, 41 days after filing the suit, the court granted Arriba a default judgment. The 1989 default judgment set aside the release of the 1986 judgment, reinstated the 1986 default judgment, and awarded Arriba the following additional amounts: (1) $750,000 for special and incidental damages, (2) $30,000,000 in attorney's fees, and (3) $150,000,000 in punitive damages. Arriba had no pleadings for punitive damages or attorney's fees in its 1989 petition.

On November 1, 1990, the appellants filed a petition for bill of review to set aside the 1989 default judgment. The petition alleged that service on both the Union and the Commission was improper, and that they did not have notice of the 1989 lawsuit before the default judgment was rendered. On October 20, 1992, the trial court held a nonjury trial on the bill of review. On December 10, 1992, the trial court denied the bill of review and held that the 1989 default judgment remained valid and final.

---

**1.** Comater was not a party in the bill of review and is not part of this appeal.

**2.** The individuals are not parties to this appeal.

## The Bill of Review

■ A bill of review is one of the authorized procedures for making a direct attack on a default judgment. *McEwen v. Harrison*, 162 Tex. 125, 345 S.W.2d 706, 709 (1961). A bill of review is a method of vacating a default judgment in which the default judgment is asserted to be void for want of valid service of process, whether or not the invalidity is disclosed by the papers on file in the case. *Id.* 345 S.W.2d at 710. To be successful on a bill of review, the bill of review plaintiff must allege and prove (1) a meritorious defense to the cause of action alleged to support the judgment, (2) which it was prevented from making by the fraud, accident, or wrongful act of the opposite party, (3) unmixed with any fault or negligence of its own. *Baker v. Goldsmith*, 582 S.W.2d 404, 406–07 (Tex.1979).

■ When a party claims that the judgment is void for lack of proper service, which denied the party due process, it is not necessary for the party to prove a meritorious defense. *Peralta v. Heights Med. Ctr.*, 485 U.S. 80, 86, 108 S.Ct. 896, 900, 99 L.Ed.2d 75 (1988) (bill of review based on void service); *see also Lopez v. Lopez*, 757 S.W.2d 721, 723 (Tex.1988) (motion for new trial); *LBL Oil Co. v. International Power Serv., Inc.*, 777 S.W.2d 390, 390–91 (Tex.1989) (appeal by writ of error). If the Union and the Commission were not properly served, they were not required to raise a meritorious defense in the trial by bill of review. *Peralta*, 485 U.S. at 87, 108 S.Ct. at 900.

### A.

### Necessity for Writ of Error

In point of error three, the Union and the Commission complain that the trial court erred in finding that they should have filed a writ of error to attack the default judgment and were precluded from filing their bill of review.

■ A bill of review is an independent action of an equitable nature brought by a party to the former action and seeking to set aside a judgment that is no longer appealable or subject to a motion for new trial. *Tice v. City of Pasadena*, 767 S.W.2d 700, 702 (Tex. 1989). A bill of review is designed to prevent manifest injustice. *French v. Brown*, 424 S.W.2d 893, 895 (Tex.1967); *Hesser v. Hesser*, 842 S.W.2d 759, 765 (Tex.App.—Houston [1st Dist.] 1992, writ denied). Relief by bill of review is available only if a party has exercised due diligence to pursue all adequate legal remedies against a former judgment, and through no fault of its own, no adequate legal remedy was available. *Tice*, 767 S.W.2d at 702; *Hesser*, 842 S.W.2d at 765.

■ To be entitled to challenge the default judgment by bill of review, the Union and the Commission must show a good excuse for failure to exhaust adequate legal remedies. *Hesser*, 842 S.W.2d at 765. If legal remedies were available but ignored, the equitable remedy of a bill of review will not later intervene. *Id.*

The appellants complain of the following findings of fact:

35. Ruben Choreno Morales testified during the trial that he first learned, and therefore the Commission and Union first learned of the April 4, 1989 judgment on September 29, 1989.

36. Alfonso Alonzo testified that he was an attorney retained by the United Mexican States Consul of San Antonio, Texas to represent the Petroleum Workers Union of the Republic of Mexico and that he was directed by Ruben Choreno Morales, upon Mr. Choreno's learning of the April 4, 1989 judgment, to do nothing on behalf of the Union and the Commission.[3]

The appellants also complain of the following conclusions of law:

17. The Union and the Commission knew of the April 4, 1989 Default judgment.

18. The Union and the Commission had sufficient notice of the April 4, 1989 Default Judgment prior to the expiration of

---

3. We find there is no evidence to support the trial court's finding of fact number 36. Alonso testified on direct and cross-examination that the judgment he discussed with Choreno was the **1986** judgment and not the 1989 judgment, which Alonso did not learn about until 1990.

the time for filing a writ of error and prior to the filing of this Bill of Review proceeding.

19. On September 29, 1989, this day being within the six month time period within which the Union and the Commission were required to file a writ of error attacking the Default Judgment of April 4, 1989. The Union's and the Commission's failure to file the writ of error is negligence as a matter of law.

29. The Union and the Commission knew of the April 4, 1989 Default Judgment within the time period sufficient to file a writ of error. Therefore, the Bill of Review filed by the Union and the Commission is improper and is denied.

■■■■ Findings of fact in a case tried to the court have the same weight as a jury's answers to questions in the charge. *Stern v. Wonzer*, 846 S.W.2d 939, 942 (Tex.App.—Houston [1st Dist.] 1993, no writ). Findings are not conclusive when a complete statement of facts appears in the record. *Pontiac v. Elliott*, 775 S.W.2d 395, 399 (Tex.App.—Houston [1st Dist.] 1989, writ denied). Findings are binding on this Court only if supported by evidence of probative force. *Id.* The trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them. *Stern*, 846 S.W.2d at 942. The same standards apply in reviewing the legal or factual sufficiency of the evidence supporting a jury's answer to a jury question. *Id.* We consider the appellants' challenge to be one of the sufficiency of the evidence to support the fact findings of which they complain. In reviewing the legal sufficiency of the evidence, we consider only the evidence and inferences that, when viewed in their most favorable light, tend to support the finding, and disregard all evidence and inferences to the contrary. *Stern*, 846 S.W.2d at 942. If there is any evidence of probative force, we must overrule the point and uphold the finding. *Id.* In reviewing the factual sufficiency of the evidence, we examine all of the evidence, both the evidence that supports the finding and the evidence that controverts the finding. *Id.* We will set aside the finding only if it is so against the great weight and preponderance

of the evidence that it is clearly wrong and manifestly unjust. *Id.*

■■■ Although a trial court's conclusions of law may not be challenged for factual insufficiency, the trial court's conclusions drawn from the facts may be reviewed to determine their correctness. *Airflow Houston, Inc. v. Theriot*, 849 S.W.2d 928, 931 (Tex.App.—Houston [1st Dist.] 1993, no writ).

Finding of fact number 35 states that the evidence at trial shows that the Union and the Commission, through their attorney, learned of the default judgment on September 29, 1989. This is the date given in the affidavit of their attorney, Ruben Choreno Morales, which was attached to their bill of review petition. At the bill of review hearing, however, another attorney for the parties, Alfonso Alonso, explained that the September 29th date in the Morales' affidavit was a mistake. He said they learned of the *1986* judgment on that date, not the *1989* judgment. Alonso explained that in September 1989, he gave Choreno a copy of the writ of injunction issued in the 1985 lawsuit. The writ of injunction was introduced as an exhibit in the bill of review hearing. The trial court reached conclusion of law number 29 and denied the bill of review based on Choreno's affidavit that the Union and the Commission knew about the default judgment in time to challenge the 1989 default judgment by writ of error.

The questions presented to us are: (1) whether the evidence was sufficient to find that the Union and the Commission discovered the 1989 judgment on September 29, 1989, and (2) whether their failure to challenge the judgment by writ of error was negligence as a matter of law.

■■■ After examining the record, we find that the evidence is sufficient to support the trial court's finding of fact that the appellants discovered the 1989 judgment on September 29, 1989. Although there is conflicting testimony from Alonso, Choreno's affidavit supports this finding. The finding is not so against the great weight and preponderance of the evidence that it is clearly wrong and manifestly unjust. *Stern*, 846 S.W.2d at 942.

On the second question, however, we find that the appellants were not negligent as a matter of law by not bringing a writ of error to attack the default judgment and therefore, were not precluded from asserting the bill of review. The cases in which courts have found a lack of diligence in pursuing other legal remedies are all distinguishable from this one. For example, in *National Bank of Texas v. First Nat'l Bank*, 682 S.W.2d 366, 368–69 (Tex.App.—Tyler 1984, no writ), the bill of review plaintiff received notice of the default judgment 13 days after the judgment was rendered, and did not challenge the judgment by appeal or writ of error. The court held that the bill of review plaintiff failed to exhaust available legal remedies, and therefore was precluded from bringing the bill of review. In *Hesser*, the bill of review plaintiff had notice of the default judgment two days after the judgment was signed, and could have filed an appeal, or a writ of error, and therefore her bill of review was denied. 842 S.W.2d at 766. In *French*, the bill of review plaintiff was precluded from bringing a bill because he did not appeal the original suit after the motion for new trial was overruled. 424 S.W.2d at 895. In *Inmon v. Mouser*, 493 S.W.2d 290, 293 (Tex.App.—Austin 1973, no writ), the plaintiff was precluded from bringing her bill of review because, although she had notice of the entry of her divorce judgment, she did not file a motion for new trial, did not perfect an appeal, did not file a writ of error, and waited until both she and her former-husband remarried before filing the bill of review.

In this case, the evidence shows that the appellants, at the earliest, received notice of the 1989 lawsuit on September 29, 1989. By that date, it was too late for the appellants to file a motion for new trial or to perfect an appeal. There is some evidence that Choreno, who happened to be in Texas and who practices law in Mexico, discovered the 1989 judgment five days (only three business days) before the expiration of the six month time period in which to file a writ of error.

Special circumstances in this case militate against finding the appellants were not diligent: the default judgment was taken against two unincorporated entities in Mexico; the principals and their representatives speak primarily Spanish; and confusion existed over the 1986 default judgment, the 1989 injunction proceeding, and the 1989 default judgment. We disagree with the trial court that appellants' failure to file a writ of error within five days under these circumstances was negligence as a matter of law and precluded the appellants from bringing their bill of review.[4]

We sustain the appellants' point of error three.

## B.

### Proper Service

In point of error one, the Union and the Commission contend the trial court erred in finding that service on the Union and the Commission was valid. The appellants argue that the method of service was improper and, alternatively, that service was defective.

The appellants complain of the following findings of fact of the trial court regarding service of process:

18. The citation served by the Texas Secretary of State upon the Union was returned to the district clerk's office in Harris County, Texas on March 2, 1989 evidencing service for the Union by the Texas Secretary of State.

19. The citation served by the Texas Secretary of State upon the Commission was returned to the district clerk's office in Harris County, Texas on March 2, 1989 evidencing service upon the Commission by the Texas Secretary of State.

24. This Court had jurisdiction over the Union and the Commission to enter the Default Judgment signed on April 4, 1989 in Cause No. 89–07592 in favor of [appellee].

33. The testimony of Ruben Choreno Morales stated that for all intents and

4. Accordingly, we find the trial court erred in making its conclusions of law numbers 18, 19, and 29.

purposes, the address of the Commission was Zaragoza No. 15, Colonia Guerrero, Mexico D.F.[5]

The appellants also complain of the following conclusions of law:

5. On February 23, 1989, service of process for the Commission was properly effectuated upon the Texas Secretary of State in Cause No. 89–07592 and therefore, this Court had jurisdiction over the Commission to enter the April 4, 1989 Default Judgment.

6. On February 23, 1989, service of process for the Union was properly effectuated upon the Texas Secretary of State in Cause No. 89–07592 and therefore, this Court had jurisdiction over the Union to enter the April 4, 1989 Default Judgment.

12. All of the requisites for the entering of the April 4, 1989 Default Judgment, including proper service upon the Union and the Commission, were satisfied.

13. Citation of service upon the Union and the Commission in Cause No. 89–07592 was properly effectuated.

14. This Court had jurisdiction over the Commission and the Union to enter the April 4, 1989 Default Judgment in Cause No. 89–07592.

15. The Default Judgment rendered by this Court on April 4, 1989 in Cause No. 89–07592 in favor of [appellee] is a final and valid judgment.

23. For all intents and purposes, the Union and Commission are the same entity, both are under the administration of the General Executive committee of the Union.

25. [Appellee] properly served the Secretary of State in Cause No. 89–07592, therefore bringing the Union and the Commission before this Court in that proceeding.

### Service Under Rule 108a

■ Under subpart A of point of error one, the appellants argue that service on a resident of a foreign country under the long-arm statute, TEX.CIV.PRAC. & REM.CODE §§ 17.044, 17.045 (Vernon 1986), is improper, and that a resident of a foreign country can only be served according to the methods of service prescribed in TEX.R.CIV.P. 108a.[6] Both parties agree that the appellee did not serve the appellants under rule 108a. Both parties agree also that no case has addressed this issue.

The appellants argue that if the legislature had intended for extra-territorial defendants to be served under the long-arm statute, there would have been no need for the Supreme Court to enact rule 108a. Their point is that a party can only be served outside the United States under rule 108a, not under the long-arm statute.

The Texas long-arm statute makes no mention of service on a defendant who resides outside of the United States. The long-arm statute provides for service on "nonresidents," without specifying whether the nonresident lives outside the United States. *See* TEX.CIV.PRAC. & REM.CODE §§ 17.044–17.093. By comparison, rule 108a covers service only on a "party in a foreign country." But, even though rule 108a is narrowly drawn, it employs permissive language—it states that "service of process *may* be effectuated" by the methods described. Thus, the appel-

---

5. At trial, the parties stipulated that the Union's address was Zaragosa No. 15, Colonia *Guerrero*, Mexico, D.F., not *Cuerrero*, as stated on the petition.

6. Rule 108a provides:
   Service of process may be effected upon a party in a foreign country if service of the citation and petition is made: (a) in the manner prescribed by the law of the foreign country for service in that country in an action in any of its courts of general jurisdiction; or (b) as directed by the foreign authority in response to a letter rogatory or a letter of request; or (c) in the manner provided by Rule 106; or (d)

pursuant to the terms and provisions of any applicable treaty or convention; or (e) by diplomatic or consular officials when authorized by the United States Department of State; or (f) by any other means directed by the court that is not prohibited by the law of the country where service is to be made. The method of service of process in a foreign country must be reasonably calculated, under all of the circumstances, to give actual notice of the proceedings to the defendant in time to answer and defend.
TEX.R.CIV.P. 108a.

lants' argument fails because the methods of service listed in rule 108a are not exclusive; they are in addition to those provided by the long-arm statute.

The appellants also argue under this point that the procedures for service in rule 108a are more restrictive than those in the long-arm statute. We disagree. The long-arm statute generally requires the party who wants to serve a nonresident to send a copy of the petition to the Secretary of State, who forwards it to the defendant. Rule 108a provides that service on a resident of a foreign country may be effectuated under rule 106.[7] Under rule 106, a plaintiff can serve the defendant by sending the citation and petition to the defendant by registered or certified mail, return receipt requested. Tex.R.Civ.P. 106(a)(2). When compared to service through the Secretary of State, service by certified mail is less restrictive.

We find a party in a foreign country may be served under the long-arm statute.

## C.

### Defective Service

Under subparts B through F of point of error one, the appellants argue that, if section 17.045 permits long-arm service on a foreign national, then the appellee's service on them was defective and did not provide them with notice. Specifically, the appellants complain: (1) the Commission's copy of its citation and petition was sent to the wrong address and was returned unclaimed to the Secretary of State; (2) the green card evidencing receipt by the Union of its citation and petition was not signed by a person authorized to receive notice; and (3) there

was no allegation in the Arriba's petition that the addresses listed for the Union and the Commission were their home offices.

■ For a trial court to have jurisdiction over a defendant under the long-arm statute, the Secretary of State must forward a copy of the citation and petition to the defendant as required by the long-arm statute. *Whitney v. L & L Realty Corp.*, 500 S.W.2d 94, 96 (Tex.1973). When the Secretary of State does so, it is conclusively presumed to be the agent for service for the nonresident defendant. *Id.* A certificate from the Secretary of State is conclusive proof of service that the Secretary of State received and forwarded the process as required by the long-arm statute. *Capitol Brick, Inc. v. Fleming Mfg. Co.*, 722 S.W.2d 399, 401 (Tex.1986).

■ A record showing jurisdiction necessary to support a default judgment upon substituted service, such as here, must meet two requirements: (1) the pleadings must allege facts that, if true, would make the defendant amenable to process by the use of the long-arm statute; and (2) there must be proof in the record that the defendant was in fact served in the manner required by statute. *Capitol Brick*, 722 S.W.2d at 401; *Whitney*, 500 S.W.2d at 95–96.

■ If the Secretary of State sends the citation and a copy of the petition to the nonresident defendant using an incorrect address for the defendant, then a default judgment rendered against that defendant should be set aside. *Royal Surplus Lines Ins. Co. v. Samaria Baptist Ch.*, 840 S.W.2d 382, 383 (Tex.1992).

---

7. Rule 106 provides:

  (a) Unless the citation or an order of the court otherwise directs, the citation shall be served by any person authorized by Rule 103 by

    (1) delivering to the defendant, in person, a true copy of the citation with the date of delivery endorsed thereon with a copy of the petition attached thereto, or

    (2) mailing to the defendant by registered or certified mail, return receipt requested, a true copy of the citation with a copy of the petition attached thereto.

  (b) Upon motion supported by affidavit stating the location of the defendant's usual place of business or usual place of abode or other place where the defendant can probably be found and stating specifically the facts showing that service has been attempted under either (a)(1) or (a)(2) at the location named in such affidavit but has not been successful, the court may authorize service

    (1) by leaving a true copy of the citation, with a copy of the petition attached, with anyone over sixteen years of age at the location specified in such affidavit, or

    (2) in any other manner that the affidavit or other evidence before the court shows will be reasonably effective to give the defendant notice of the suit.

### 1. Service on the Commission

■ Under subpart B of point of error one, the appellants argue that the service on the Commission was fatally defective because the citation was sent to the wrong address. In Arriba's petition, the address for the Commission was stated as "37 Bahia de *Espiruta Santo Esquira* (at the corner of) Bahia de Ballenas." The Secretary of State mailed the Commission's copy of the petition and citation to that address. The undisputed evidence at the bill of review trial showed that this address was not and has never been the Commission's address. The Commission's correct address at the time and for many years before that time was "37 Bahia de *Todos Santos* (at the corner of) Bahia de Ballenas." The Commission's correct address is three blocks from the address given in Arriba's petition. The certificate prepared by the Secretary of State after the default judgment had been entered against the Commission shows that the envelope sent to the Commission by the Secretary of State with the petition and citation enclosed was returned on April 11, 1989, to the Secretary of State marked "unclaimed."

The court did not make a finding regarding the Commission's correct address. There is no evidence to support the trial court's finding of fact number 33, that "for all intents and purposes, the address of the Commission was Zaragoza No. 15, Colonia Guerrero, Mexico D.F." The only evidence received at the bill of review trial was to the contrary. Choreno specifically testified that the Commission's correct address was 37 Bahia de Todos Santos at the corner of Bahia de Ballenas. The trial court also erred in finding in its conclusion of law number 23 that the Commission and Union are the same entity. The evidence cited by Arriba to support this conclusion simply does not; testimony from Choreno and others specifically support the conclusion that the two are separate entities.

The court did not make a finding stating that anyone at the Commission had actual notice of the 1989 suit before the default judgment was rendered. The only finding of fact states that the Commission first learned of the 1989 lawsuit on September 29, 1989, which was too late to file an answer because the default judgment had already been rendered.

Service on the Commission was invalid because Arriba's petition gave the wrong address for the Commission and because the Secretary of State used the incorrect address to notify the Commission of the 1989 lawsuit. *Royal Surplus Lines,* 840 S.W.2d at 383. Service at an invalid address is a ground upon which a default judgment based on substituted service on the Secretary of State will be set aside. *Id.* The service did not provide the Commission with any notice of the 1989 lawsuit at the time the default judgment was rendered against it.

We sustain point of error one as to the default judgment entered against the Commission.[8]

### 2. Service on the Union

Under subpart E of point of error one, the Union contends it did not receive notice of the 1989 lawsuit before the entry of the default judgment.

The Union was served through the Secretary of State, who sent citation and the petition by certified mail to the Union's correct address. The Secretary of State received the green card evidencing receipt of the citation and petition by someone at the Union. The signature on the green card was illegible.

### Notice of the 1989 Suit

■ Under subpart E of point of error one, the Union contends it proved it did not receive notice of the suit; thus, due process requires us to reverse the default judgment. If the Union did not receive notice of the 1989 lawsuit, then the default judgment rendered against it must be set aside. *See Peralta,* 485 U.S. at 86–87, 108 S.Ct. at 900.

The evidence at the bill of review trial shows no one at the Union had actual notice

---

8. Accordingly we find that the trial court's findings of fact number 19 and 24, relevant to the Commission, are not supported by sufficient evidence in the record. The trial court erred in making its conclusions of law numbers five, 12, 13, 14, 15, and 25 (relevant to the Commission).

of the 1989 suit until September 29, 1989, almost six months after the default judgment against the Union had been rendered. Other evidence shows that the Union did not receive notice of the 1989 lawsuit and judgment until February 1990. The trial court made no finding of fact that the Union had any notice before September 29, 1989, and no evidence, other than the green card from the Secretary of State, was presented to the contrary.

 The evidence at the bill of review trial was factually sufficient to support the finding of fact that the Union received notice on September 29, 1989, almost six months after default judgment was rendered. Therefore, because the record establishes that the Union had no actual or constructive notice of the lawsuit before judgment was rendered, it was deprived due process, and the default judgment must be reversed. *Peralta,* 485 U.S. at 86–87, 108 S.Ct. at 900; *LBL Oil Co.,* 777 S.W.2d at 390–91; *Lopez,* 757 S.W.2d at 723. Moreover, the Union was not required to prove a meritorious defense at the bill of review trial. *Id.*

We sustain point of error one as to the default judgment entered against the Union.[9]

### D.

### Validity of 1986 Agreement

 In point of error four, the appellants contend that the trial court erred in finding they acknowledged the validity of the 1986 and 1989 default judgments in the May 8, 1990 joint venture agreement between the Commission and Arriba. In conclusions of law numbers 20 and 21, the court found that the appellants were judicially estopped by the 1990 agreement from attacking the default judgment.

 Arriba does not contend the joint venture agreement was a statement made in the course of a judicial proceeding. An agreement made by the parties outside the courtroom is not a judicial admission. For a judicial admission to exist, and be conclusive

against a party, it must have been made in the course of a judicial proceeding. *Miller v. Gann,* 842 S.W.2d 641, 641 (Tex.1992); *Balaban v. Balaban,* 712 S.W.2d 775, 777–78 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.) (judicial estoppel is based on inconsistency in judicial proceedings).

Accordingly, we find that the trial court erred in making its conclusions of law numbers 20 and 21.

We sustain point of error four.

We do not find it necessary to reach the other points of error.

We reverse the trial court's judgment and remand for a new trial on the merits of the lawsuit filed by Arriba in 1989.

---

9. Accordingly, we find that the trial court's findings of fact numbers 18 and 24, relevant to the Union, are not supported by sufficient evidence.

Likewise, the trial court erred in conclusions of law numbers six, 12, 13, 14, 15, and 25, relevant to the Union.