**INTERNATIONAL TRANSACTIONS, LTD., Plaintiff,**

v.

**EMBOTELLADORA AGRAL REGIONMONTANA SA DE CV, et al., Defendants.**

**No. Civ.A. 3:01CV1140G.**

United States District Court,
N.D. Texas,
Dallas Division.

March 13, 2002.

Ernest W. Leonard, Friedman & Feiger, Dallas, TX, Gerald Thomas Drought, Martin & Drought, Inc., San Antonio, TX, for Plaintiff.

Molly Steele, Thompson & Knight, Dallas, TX, George R. Diax–Arrastia, Schirrmeister Ajamie, Houston, TX, Patrick J. Neligan, Jr., Neligan Tarpley Andrews & Foley, Dallas, TX, Andrew C. Schirrmeister, III, Schirrmeister Ajamie, Houston, TX, George H. Tarpley, Neligan Tarpley Andrews & Foley, Dallas, TX, for Defendants.

### *MEMORANDUM ORDER*

FISH, Chief Judge.

Before the court are the motions of the defendants Agral Arrendadora, S.A. de C.V., Agral Inmobiliaria, S.A. de C.V., Embotelladora Agral Regiomontana, S.A. de C.V., Embotelladora Agral de la Laguna, S.A. de C.V., and Agral Comisionista y Distribuidora, S.A. de C.V. (collectively, "Agral") to dismiss this case for lack of personal jurisdiction and insufficient service of process.[1] Also before the court is

---

1. On July 5, 2001, defendants Embotelladora Agral Regiomontana, Embotelladora Agral de la Laguna, and Agral Comisionista y Distribuidora filed a motion to dismiss for insufficient service of process, defective process and lack of personal jurisdiction. *See* Motion of Defendants Embotelladora Agral Regiomontana, S.A. de C.V., Embotelladora Agral de la Laguna, S.A. de C.V., and Agral Comisionista y Distribuidora, S.A. de C.V. To Dismiss for

Agral's motion to strike certain evidence submitted in support of the response of the plaintiff International Transactions, Ltd. ("ITL") to Agral's motion to dismiss and the motion of ITL to strike certain evidence in support of Agral's motion to dismiss. *See* Motion to Strike Certain Evidence Submitted in Support of Plaintiff's Response to the Motions to Dismiss of All Five Defendants and Brief in Support ("Agral's Motion to Strike"); Plaintiff's Opposed Motion to Strike Certain Evidence Submitted in Support of Motions to Dismiss of All Five Defendants and Brief in Support Thereof ("ITL's Motion to Strike"). For the reasons discussed below, Agral's motion to dismiss is denied and Agral's and ITL's motions to strike are denied as moot.

## I. *BACKGROUND*

This case involves a debt collection dispute between ITL and Agral. ITL is a Cayman Islands corporation. *See* Original Petition to Confirm Arbitration Award and for Entry of Judgment on Award ("Complaint") ¶ 2, located at Exhibit A in Notice of Removal Pursuant to 9 U.S.C. §§ 205 & 302 and 28 U.S.C. § 1446 ("Notice of Removal"). The Agral defendants are Mexican corporations with their principal place of business in Mexico. Notice of Removal ¶¶ 8, 14; Complaint ¶¶ 3–7. Agral bottles and distributes Pepsi–Cola products in northeastern Mexico. Complaint ¶ 9. ITL

originally brought this suit against the Agral defendants in the 68th Judicial District Court of Dallas County, Texas seeking an order confirming an arbitration award under Texas law. Complaint. On June 14, 2001, two of the defendants, Agral Arrendadora, S.A. de C.V., and Agral Inmobiliaria, S.A. de C.V., removed the case to this court pursuant to 9 U.S.C. §§ 205 & 302 and 28 U.S.C. § 1446. *See* Docket Sheet; Notice of Removal at 1.

According to the Complaint, ITL entrusted funds to Sharp Capital, Inc. ("Sharp")[2] to invest in the purchase of a promissory note originally issued by Agral to NationsBank.[3] Complaint ¶ 9. The loan proceeds were to be used by Agral for the construction of a Pepsi–Cola bottling plant in Monterrey, Mexico. *Id.* The loan was for approximately $10 million. Plaintiff's Response to Defendants' Motions to Dismiss and Brief ("Response to Dismiss") at 2. The promissory note contained an arbitration clause requiring that any disputes between Sharp, the holder of the note, and the Agral defendants be resolved through arbitration. Complaint ¶ 10; *see also* Promissory Note ¶ 17, attached to Complaint.

In 1996, Agral defaulted on the promissory note. Complaint ¶ 10. Shortly thereafter, Sharp—acting pursuant to the arbitration clause in the note—initiated arbitration proceedings against Agral

Insufficient Service of Process, Defective Process and Lack of Personal Jurisdiction (Fed. R. Civ. P. 12(b)(2), (4), (5)). On that same day, defendants Agral Arrendadora, S.A. de C.V. and Agral Inmobiliaria, S.A. de C.V. filed a similar motion to dismiss. *See* Motion of Defendants Agral Arrendadora, S.A. de C.V. and Agral Inmobiliaria, S.A. de C.V. To Dismiss for Insufficient Service of Process and Lack of Personal Jurisdiction (Fed. R. Civ. P. 12(b)(2),(5)). The Agral defendants then filed a joint memorandum in support of both motions to dismiss. *See* Memorandum in Sup-

port of the Motions to Dismiss of All Five Defendants ("Motion to Dismiss").

**2.** Sharp is a Texas corporation with its principal place of business in Texas. Notice of Removal at 5 n. 22.

**3.** ITL asserts that Embotelladora Agral Regiomontana was the recipient of the $10 million loan from Sharp and that the other Agral defendants signed continuing and unconditional guaranties with NationsBank to guarantee the promissory note. Plaintiff's Response to Defendants' Motion to Dismiss at 2.

with Judicial Arbitration and Mediation Services ("JAMS") in Dallas, Texas.[4] *Id.* In response, Agral brought two different suits against Sharp in this district. In the first case, Agral Regiomontana, one of the defendants in this action, filed suit against Sharp seeking to stay arbitration proceedings before JAMS and to compel arbitration before the American Arbitration Association ("AAA"). Response to Dismiss at 4; see also *Embotelladora Agral, et al. v. Sharp Capital Inc., et al.,* 952 F.Supp. 415 (N.D.Tex.1997) (Fitzwater, J.) ("Agral Suit 1"). Magistrate Judge Jane Boyle later denied Agral's request for relief and dismissed the case on August 26, 1996. Response to Dismiss at 4; see also Docket Sheet for No. 96–CV–01600–D. In the second suit, filed on October 16, 1996, four of the five current Agral defendants sought to compel the joinder of additional parties to the arbitration proceedings, as well as to assert an affirmative claim for relief against Sharp on the basis of usury. Response to Dismiss at 4; see also *Embotelladora Agral, et al. v. Sharp Capital Inc., et al.,* No. 96–CV–02862–P (N.D.Tex.) (Solis, J.) ("Agral Suit 2"). Judge Solis closed that case in 1999 on the ground that the dispute between the parties had been settled. *See* Docket Sheet for No. 96–CV–02862–P (entry of February 22, 1999).

On January 31, 1997, an arbitration award of more than $11 million was entered in favor of Sharp. Complaint ¶ 11; *see also* Notice of Removal at 2. Approximately one month later, four of the Agral defendants filed for bankruptcy protection in Mexico. Response to Dismiss at 5.[5] On February 4, 1999, ITL brought suit in this district against Sharp and Mauricio Gutierrez, Sharp's President, seeking to regain custody of the arbitration award. *Id.* at 8; see also *International Transactions Limited v. Gutierrez, et al.,* No. 99–CV–00241–M (N.D.Tex.) (Lynn, J.). Nearly two years later, Judge Lynn ordered the Special Master for the Sharp Estate to convey the arbitration award to ITL.[6] Complaint ¶ 12; *see also* Response to Dismiss at 9. Thereafter, ITL brought the present action in Texas state court to enforce payment of the arbitration award. Complaint ¶ 14; Response to Dismiss at 9.

On July 5, 2001, after removing the case to this court, the Agral defendants filed motions to dismiss this case for insufficient service of process, defective process, lack of personal jurisdiction, and international comity. Motion to Dismiss at 2. Agral later filed a motion to strike certain materials, including exhibits and portions of exhibits, attached to ITL's response to Agral's motion to dismiss. Agral's Motion to Strike. ITL responded in kind by seek-

---

4. The arbitration was apparently held in Monterrey, Mexico in November 1996. Notice of Removal at 2.

5. In its response to Agral's motion to dismiss, ITL asserts that Sharp employed a Mexican attorney, Mr. Jose Trevino Canamar, to pursue enforcement of the arbitration award in Mexico. Response to Dismiss at 6. Allegedly, Mr. Trevino did more than that. According to ITL, Sharp, the Agral Companies, acting through their parent group, Grupo Embotelladora Noreste, S.A. de C.V. ("GEN"), and Mr. Trevino acted in concert, through a series of fraudulent assignments, to assign the arbitration award back to GEN, ultimately circum-

venting "the Mexican bankruptcy process without the knowledge or participation of [ITL], notwithstanding all parties awareness of [ITL's] ownership rights and claims related thereto." Response to Dismiss at 7–8 Agral disputes this contention, claiming that Sharp assigned its rights in the arbitral award to Mr. Trevino in August 1998 and that in September 1998, Mr. Trevino assigned the arbitration award to GEN. Notice of Removal at 3.

6. Agral contends that ITL was actually assigned nothing by the Special Master because Sharp had already assigned its rights in the award to Mr. Trevino. Notice of Removal at 3–4.

ing to strike certain materials submitted in support of Agral's motion to dismiss. ITL's Motion to Strike.[7]

On February 7, 2002, ITL filed a supplemental brief in which it informed the court that the bankruptcy proceedings in which four of the five Agral defendants were parties had been terminated by the bankruptcy court in Monterrey, Mexico on or about December 19, 2001. Supplemental Brief ("Supplemental Brief") at 1–2 and attached Exhibit A. In light of this development, ITL asked the court to reject Agral's attempt to dismiss this case on the basis of international comity. *Id.* at 1–2. Agral responded to ITL's supplemental brief on March 1, 2002 and sought to modify its motion to dismiss with respect to dismissal on comity grounds. Agral Companies' Response to Plaintiff's Supplemental Brief at 2 ("Response to Supplemental").

## II. *ANALYSIS*

### A. *Insufficiency of Service of Process*

Agral argues that ITL's service of the complaint was deficient for two reasons. First, Agral contends that service of process on all five Agral defendants via the Texas Secretary of State was defective because (1) the Secretary of State is not in the position to properly serve a foreign party pursuant to Rules 106[8] and 108a[9] of

---

7. Because none of the challenged material played a dispositive role in the court's decision to deny Agral's motion to dismiss, both motions to strike are denied as moot.

8. Rule 106. Method of Service

(a) Unless the citation or an order of the court otherwise directs, the citation shall be served by any person authorized by Rule 103 by

(1) delivering to the defendant, in person, a true copy of the citation with the date of delivery endorsed thereon with a copy of the petition attached thereto, or

(2) mailing to the defendant by registered or certified mail, return receipt requested, a true copy of the citation with a copy of the petition attached thereto.

(b) Upon motion supported by affidavit stating the location of the defendant's usual place of business or usual place of abode or other place where the defendant can probably be found and stating specifically the facts showing that service has been attempted under either (a)(1) or (a)(2) at the location named in such affidavit but has not been successful, the court may authorize service

(1) by leaving a true copy of the citation, with a copy of the petition attached, with anyone over sixteen years of age at the location specified in such affidavit, or

(2) in any other manner that the affidavit or other evidence before the court shows will be reasonably effective to give the defendant notice of the suit.

9. Rule 108a. Service of Process in Foreign Countries

(1) Manner. Service of process may be effected upon a party in a foreign country if service of the citation and petition is made:

(a) in the manner prescribed by the law of the foreign country for service in that country in an action in any of its courts of general jurisdiction; or

(b) as directed by the foreign authority in response to a letter rogatory or a letter of request; or

(c) in the manner provided by Rule 106; or

(d) pursuant to the terms and provisions of any applicable treaty or convention; or

(e) by diplomatic or consular officials when authorized by the United States Department of State; or

(f) by any other means directed by the court that is not prohibited by the law of the country where service is to be made. The method for service of process in a foreign country must be reasonably calculated, under all of the circumstances, to give actual notice of the proceedings to the defendant in time to answer and defend. A defendant served with process under this rule shall be required to appear and answer in the same manner and time and under the same penalties as if he had been personally served with citation within this state to the full extent that he may be required to appear and answer under the Constitution of the United States or under any applicable

the Texas Rules of Civil Procedure; and (2) international service of process via the Secretary of State does not conform to due process and is, therefore, unconstitutional. Motion to Dismiss at 13–16. Second, three of the Agral defendants, Agral Regiomontana, Agral de Laguna, and Agral Comisionista, argue that even if service of process was proper, process was defective because it was served on them at the wrong address. *Id.* at 17–18. The court will consider the merits of each of these arguments in turn.

### 1. *Legal Standard*

 Because ITL originally instituted this action in Texas state court, ITL bears the burden of demonstrating on the face of the record that service was properly performed.[10] See *McKanna v. Edgar*, 388 S.W.2d 927, 929–30 (Tex.1965). Unless service of process was made in strict compliance with Texas state law, the court acquires no personal jurisdiction over Agral. See *Whitney v. L & L Realty Corporation*, 500 S.W.2d 94, 96 (Tex.1973).

ITL points to two cases in support of its claim that service of process on Agral, a foreign defendant, was proper via the Texas Secretary of State. Response to Dismiss at 13–16 (citing *The Commission of Contracts of the General Executive Committee of the Petroleum Workers Union of the Republic of Mexico v. Arriba, Limited*, 882 S.W.2d 576 (Tex.App.—Houston [1st Dist.] 1994, no pet.), and *Paradigm Entertainment, Inc. v. Video System Co., Ltd.*, No. Civ. A. 3:99–CV–2004P, 2000 WL 251731 (N.D.Tex. March 3, 2000)).

Based on the court's reading of Rules 103, 106 and 108a and the decisions in *Petroleum Workers Union* and *Paradigm Entertainment*, the court finds that service of process on Agral is permissible under the Texas Rules of Civil Procedure, that such service comports with the Hague Convention, and that such service—under the circumstances of this case—does not violate the due process clause.

### 2. *Service of Process under Rules 106 and 108a*

Under Agral's reading of the Texas Rules of Civil Procedure, ITL's service of process was ineffective. Motion to Dismiss at 13–14; Reply in Support of the Motions to Dismiss of All Five Defendants ("Reply to Dismiss") at 6–9. In support of this claim, Agral relies on *World Distributors, Inc. v. Knox*, 968 S.W.2d 474, 478–80 (Tex.App.—El Paso 1998, no pet.), in which the Court of Appeals held that under Rules 108, 106 and 103, the Texas Secretary of State is not authorized by law to serve process.

 Although not directly on point, the Houston Court of Appeals decision in *Petroleum Workers Union* supports ITL's claim that international service of process on Agral is proper, via the Texas Secretary of State, under Rules 106 and 108a. 882 S.W.2d at 584–85. In that case, the plaintiff had sued the Mexican petroleum workers union in a Houston state court and served the union in Mexico via the Texas Secretary of State, *i.e.*, under the Texas long-arm statute.[11] *Id.* at 580. After the defendants failed to answer, the court granted the plaintiff's request for a

---

convention or treaty in an action either in rem or in personam.

(2) Return. Proof of service may be made as

prescribed by the law of the foreign country, by order of the court, by Rule 107, or by a method provided in any applicable treaty or convention.

**10.** ITL attempted service of process on each Agral defendant in Nuevo Leon, Mexico. Complaint ¶¶ 3–7.

**11.** Tex. Civ. Prac. & Rem.Code §§ 17.044, 17.045 (Vernon 1997 and Vernon Supp.2002).

default judgment. *Id.* On appeal, the defendants contended that service under the Texas long-arm statute was improper and that a resident of a foreign country can only be served according to the methods prescribed under Rule 108a. *Id.* at 584. The Court of Appeals held that Rule 108a did not constitute the exclusive means by which a party in a foreign country may be served and that service was permissible under the long-arm statute. *Id.* at 585. In so holding, the court observed that Rule 108a was permissive in nature and that it "provides that service on a resident of a foreign country may be effectuated under rule 106." *Id.* While case law on this issue is sparse, the court agrees with the reasoning in *Petroleum Workers Union* that the Secretary of State may properly serve a foreign party pursuant to Rules 106 and 108a,[12] as was done in this case.

### 3. *Hague Convention*

■ In its reply, Agral advanced an alternate argument as to why service of process by the Secretary of State was impermissible. Reply to Dismiss at 6–9. Specifically, Agral maintains that service was insufficient under the Hague Convention.[13] Perhaps anticipating this argu-

ment, ITL directed the court to Judge Solis' recent decision in *Paradigm Entertainment*, which addressed a similar contention. Response to Dismiss at 14–16. In that case, the plaintiff served the defendant, a Japanese corporation, via the Secretary of State under Texas' long-arm statute. *Paradigm Entertainment*, 2000 WL 251731, at *1. In response, the defendant contended that service was improper under the Hague Convention. *Id.* at *4. After conducting an extensive analysis of Texas law and the service of process requirements of the Hague Convention, the court determined that international service of process on a foreign defendant, through substituted service upon the Texas Secretary of State, is permissible under Article 10(a) of the Hague Convention.[14] *Id.* at *8.

ITL contends that the court's holding in *Paradigm Entertainment* mandates a similar result in this case because Mexico is a signatory to the Hague Convention and Mexico did not make an outright objection to Article 10(a), which allows service of process by mail. Response to Dismiss at 15–16. Agral disputes this contention, claiming Mexican constitutional law does not permit or recognize service by mail[15]

---

12. Agral's reply supports the court's decision on this point. Notably, Agral appears to abandon its argument that service of process is impermissible under Rule 108a. *See* Reply to Dismiss at 6–9. Instead, Agral claims that service failed under Rule 108a because it did not receive timely notice of the action. *Id.* at 9. This argument is essentially identical to Agral's claim that service of process via the Secretary of State is contrary to the requirements of due process. *See* Motion to Dismiss at 15–16. As discussed below, the court finds this argument is without merit.

13. *See* Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638, *reprinted in* FED. R. CIV. P. 4 advisory committee's notes (hereinafter "Hague Convention").

14. That provision states, "Provided the State of destination does not object, the present Convention shall not interfere with—(a) the freedom to send judicial documents, by postal channels, directly to persons abroad, ..." Hague Convention, Article 10(a).

15. Agral introduced some evidence in support of the claim that civil law in Mexico favors the practice of serving legal documents through a government official or other official channels. *See* Second Declaration of Luis Alejandro Bustos Olivares, located in Appendix to Reply in Support of Motions to Dismiss All Five Defendants, at Tab 1, ¶ 5. The court find this declaration is not dispositive on this issue because Mexico is a signatory to the Hague Convention.

and that *Paradigm Entertainment* is distinguishable because ITL failed to meet its burden of showing that the Secretary of State was a proper agent for substituted service. Reply to Dismiss at 6–9.

The court agrees with ITL that service of process on Agral, via the Texas Secretary of State, comports with Texas law and the Hague Convention. First, the court rejects Agral's argument that the requirements for proper service by the Texas Secretary of State have not been met because ITL failed to show that Agral either engaged in business in Texas or that the dispute over the arbitration award arose out of business done in this state.[16] *Id.* at 7–8. As discussed below, the court finds this dispute over the arbitration award relates to Agral's business in Texas. Consequently, the Texas Secretary of State properly acted as an agent for service of process. *See* TEX. CIV. PRAC. & REM.CODE § 17.044(b) (Vernon 1997).

Second, the court is not persuaded by Agral's claim that even if Article 10(a) permits service of process in this case, service was deficient because ITL failed to accomplish "true service by mail" under Article 10(b) or 10(c) of the Hague Convention. Reply to Dismiss at 8–9. According to Agral, those sub-articles allow competent persons to effect service of process through "judicial officers, officials, or other competent persons of the State of destination." *Id.* at 8 (citing language in Articles 10(b) and (c)). The court finds that the record in this case supports ITL's

claim that the Secretary of State properly forwarded service of process on Agral via registered mail. *See* Appendix to Plaintiff's Response to Defendants' Motion to Dismiss and Brief ("ITL's Dismiss Appendix") at Exhibit 23. Agral has failed to cite a single case in support of its position that service of process should be quashed under these circumstances; at least two cases appear to have rejected its position. See *Paradigm Entertainment,* 2000 WL 251731, at * 7 (holding requirements of Hague Convention met where the plaintiff served substituted service on Texas Secretary of State who then forwarded "the documents to the party being served within the country of destination."); *Bayoil Supply and Trading of Bahamas v. Jorgen Jahre Shipping AS,* 54 F.Supp.2d 691, 693 (S.D.Tex.1999) (denying motion to quash service of the defendant, a Norwegian corporation, on the basis that plaintiff failed to comply with the Hague Convention by serving process with Texas Secretary of State and sending a copy of process directly to the defendant rather than forwarding those documents to central authority in Norway because the plaintiff filed the process with the Texas Secretary of State and requested that the documents be forwarded to the defendant).

### 4. *Due Process*

Agral next claims that service of process through the Texas Secretary of State is contrary to the requirements of due process. Motion to Dismiss at 15–16. In support of this claim, Agral notes that

---

**16.** Texas law provides that the Secretary of State is an agent for service of process on a nonresident who "is required by statute to designate or maintain a resident agent or engages in business in this state, but has not designated or maintained a resident agent for service of process." TEX. CIV. PRAC. & REM.CODE § 17.044(a)(1) (Vernon 1997). In addition, the Secretary of State "is an agent for service of process on a nonresident who engages in business in this state, but does not maintain a

regular place of business in this state or a designated agent for service of process, in any proceeding that arises out of the business done in this state and to which the nonresident is a party." TEX. CIV PRAC. & REM.CODE § 17.044(b) (Vernon 1997). Texas law also requires that the Secretary of State send notice of service of process to the nonresident defendant via registered mail. TEX. CIV. PRAC. & REM CODE § 17.045(a), (d) (Vernon Supp. 2002).

the two Agral defendants who were served with ITL's complaint, Agral Arrendadora and Agral Inmobiliaria, did not receive it until two weeks after an answer was due. *Id.* at 16.[17] Hence, reasons Agral, this method of serving process is unconstitutional because ITL could have obtained a default judgment before Agral even received notice of the suit. *Id.*

Due process requires notice that is reasonably calculated to apprise a party of the pendency of a lawsuit and to afford that party the opportunity to present a response. *Matter of Faden,* 96 F.3d 792, 795–96 (5th Cir.1996) (citing *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). In determining the constitutional adequacy of notice, the Fifth Circuit has stated that "whether a particular method of notice is reasonable depends on the particular [factual] circumstances." *Matter of Faden,* 96 F.3d at 796 (citing *Tulsa Professional Collection Services, Inc. v. Pope,* 485 U.S. 478, 484, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988)).

On the record before it, the court cannot find that service of process through the Texas Secretary of State, pursuant to Rules 106 and 108a, Tex.R. Civ. P., is contrary to the requirements of due process, particularly in light of the fact that Agral has sustained no due process injury. As the record here demonstrates, Agral has had an opportunity to be heard and defend this action. Agral has not cited, nor has the court been able to locate, any case law that supports a finding of a due process violation under these circumstances.

### 5. *Defective Service of Process for Three of the Agral Defendants*

Agral contends that service of process on three of the five Agral defendants, Agral Regiomontana, Agral de Laguna, and Agral Comisionista, was fatally defective because the address for each of these defendants was incorrect. Motion to Dismiss at 17–18. It is undisputed that service of process for these three defendants was returned to the Texas Secretary of State, bearing the notation "Devuelta." ITL's Dismiss Appendix at Tab 23. ITL asserts that it served process on Agral Regiomontana at an address previously used by that corporation, *see* Response to Dismiss at 11–12, and that it served the other two defendants at that same address given ITL's understanding that all three of these Agral defendants were part of the same corporate group. *Id.* at 12.

Under Texas law, the plaintiff must provide the Secretary of State with the correct address of the "home or home office" of the defendant. *See* Tex. Civ. Prac. & Rem.Code § 17.045(a); see also *Petroleum Workers Union,* 882 S.W.2d at 586 (noting attempted service of process on a foreign defendant is invalid when the Secretary of State mails a copy of the complaint to an incorrect address). ITL has the burden of affirmatively showing strict compliance with the form of the service prescribed in the statute. *McKanna,* 388 S.W.2d at 930. If ITL failed to strictly comply with the statutory requirements of service of process, the court is unable to acquire personal jurisdiction over these Agral defendants. *Ward v. Hooper,* No.05–00–01903–CV, 2002 WL 15881, at * 3 (Tex.App.—Dallas Jan. 8, 2002, no pet.) (holding service of process was defective because plaintiff

---

**17.** The Secretary of State received the citations on April 11, 2001 but the citations were apparently not mailed until April 18, 2001. Motion to Dismiss at 16. Although Agral's answer was due on May 2, 2001, it allegedly did not receive the complaint until May 16, 2001. *Id.*

used an incorrect address to serve defendant). In light of ITL's concession on this issue, *see* Response to Dismiss at 12–13, the court will quash service with respect to these three Agral defendants but allow ITL the opportunity to re-serve them. See *Kreimerman v. Casa Veerkamp, S.A. de C.V.*, 22 F.3d 634, 645–46 (5th Cir.), *cert. denied*, 513 U.S. 1016, 115 S.Ct. 577, 130 L.Ed.2d 492 (1994) (holding district court has broad discretion to dismiss an action for ineffective service of process and that trial court did not abuse discretion in denying plaintiff's third motion to extend the time within which to accomplish service on a Mexican defendant); *Umbenhauer v. Woog*, 969 F.2d 25, 30 (3rd Cir. 1992) ("Upon determining that process has not been properly served on a defendant, district courts possess broad discretion to either dismiss the plaintiff's complaint for failure to effect service or to simply quash service of process. However, dismissal of a complaint is inappropriate when there exists a reasonable prospect that service may yet be obtained.") (internal citations omitted).

Accordingly, Agral's motion to dismiss for insufficiency of service of process is, for the time being, denied. ITL will be given sixty (60) days from the date of this order to properly effect service of process on Agral Regiomontana, Agral de Laguna, and Agral Comisionista. If service is not made on these defendants within that time, the motion to dismiss for the claims against them for insufficient service of process will be granted.

### B. *Lack of Personal Jurisdiction*

#### 1. *Factual Standard: Prima Facie Case*

When a nonresident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident. *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir.), *cert. denied*, 513 U.S. 930, 115 S.Ct. 322, 130 L.Ed.2d 282 (1994); *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir.1985). If the district court chooses to decide the matter without an evidentiary hearing, the plaintiff may meet its burden by presenting a *prima facie* case for personal jurisdiction. *Wilson*, 20 F.3d at 648; *Thompson v. Chrysler Motors Corporation*, 755 F.2d 1162, 1165 (5th Cir.1985). The court will take the allegations of the complaint as true, except where they are controverted by opposing affidavits, and all conflicts in the facts are resolved in favor of the plaintiff. *Wilson*, 20 F.3d at 648. In making its determination, the court may consider affidavits, interrogatories, depositions, oral testimony, or any combination of recognized discovery methods. *Thompson*, 755 F.2d at 1165; *Spademan*, 772 F.2d at 1192.

#### 2. *Legal Standard*

A court determines the existence of personal jurisdiction over a nonresident defendant by examining the "(1) assertion of jurisdiction by the law of the forum;" and "(2) conformity of the law with the Constitution." *Pedelahore v. Astropark, Inc.*, 745 F.2d 346, 347 (5th Cir. 1984). A defendant is amenable to the personal jurisdiction of a federal court sitting in diversity to the same extent that it would be amenable to the jurisdiction of a state court in the same forum. *Id.* Applying state law, this court must first determine whether Texas, the forum state, could assert long-arm jurisdiction. *Id.* Because the Texas long-arm statute confers jurisdiction to the limits of the federal constitution, *Hall v. Helicopteros Nacionales De Colombia, S.A.*, 638 S.W.2d 870, 872 (Tex.1982), *rev'd on other grounds*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984), the court need only concern itself with the federal due process inquiry. *Bullion v. Gillespie*, 895 F.2d 213, 215–16 (5th Cir.1990).

### 3. Due Process Requirements

Due process requires the satisfaction of two elements to exercise personal jurisdiction over a nonresident: (a) the nonresident must have some minimum contact with the forum which results from an affirmative act on its part; and (b) it must be fair and reasonable to require the nonresident to defend the suit in the forum state. *Spademan,* 772 F.2d at 1189. The due process clause ensures that persons have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." *Burger King Corporation v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

### 4. Minimum Contacts

To establish minimum contacts, a nonresident defendant must do some act or acts by which it "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). In determining whether the exercise of jurisdiction is appropriate, the Supreme Court has focused less on presence in the forum state as a means to establish jurisdiction and looked increasingly to whether a defendant's contacts with the forum make it reasonable to require the defendant to defend the particular suit in that forum. *Shaffer v. Heitner,* 433 U.S. 186, 203, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977).

Two types of *in personam* jurisdiction may be exercised over a nonresident defendant: specific and general. Specific jurisdiction exists if the cause of action is related to, or arises out of, the defendant's contacts with the forum, and those contacts meet the due process standard. *Holt Oil & Gas Corporation v. Har-*

vey, 801 F.2d 773, 777 (5th Cir.1986), *cert. denied,* 481 U.S. 1015, 107 S.Ct. 1892, 95 L.Ed.2d 499 (1987); *Wilson,* 20 F.3d at 647; *Spademan,* 772 F.2d at 1190. General jurisdiction, on the other hand, may be found when a claim is unrelated to the nonresident's contacts with the forum but where those contacts are "continuous and systematic." *Helicopteros,* 466 U.S. at 415, 104 S.Ct. 1868; *Wilson,* 20 F.3d at 647.[18]

When specific jurisdiction is at issue, the minimum contacts inquiry focuses on whether the nonresident defendant has "'purposefully directed' his activities at residents of the forum" state. *Spademan,* 772 F.2d at 1190 (quoting *Burger King,* 471 U.S. at 472, 105 S.Ct. 2174). The purposeful availment requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts ... or of the 'unilateral activity of another party or a third person.'" *Burger King,* 471 U.S. at 475, 105 S.Ct. 2174. A plaintiff must establish a substantial connection between the nonresident defendant and the forum state. *Jones v. Petty–Ray Geophysical, Geosource, Inc.,* 954 F.2d 1061, 1068 n. 9 (5th Cir.), *cert. denied,* 506 U.S. 867, 113 S.Ct. 193, 121 L.Ed.2d 136 (1992); *Bearry v. Beech Aircraft Corporation,* 818 F.2d 370, 374 (5th Cir.1987) (citing *Burger King,* 471 U.S. at 475 n. 18, 105 S.Ct. 2174); *McGee v. International Life Insurance Company,* 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).

A court must consider all factors when making the purposeful availment inquiry—"no single factor, particularly the number of contacts, is determinative." *Stuart,* 772 F.2d at 1192. "[W]hether the

---

18. Because the claims in this case relate to Agral's contacts with Texas, and because ITL has not alleged that Agral has had continuous and systematic contacts with Texas, the court will not address the question of general jurisdiction.

minimum contacts are sufficient to justify subjection of the non-resident to suit in the forum is determined not on a mechanical and quantitative test, but rather under the particular facts upon the quality and nature of the activity with relation to the forum state." *Mississippi Interstate Express, Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1006 (5th Cir.1982).

### 5. Specific Jurisdiction

 ITL argues that Agral is subject to personal jurisdiction in Texas because Agral's contacts with Texas support a finding of specific jurisdiction. Response to Dismiss at 16–27. Specifically, ITL contends that Agral is subject to personal jurisdiction because the promissory note and unconditional and continuing guarantees Agral entered into with NationsBank were made in Texas and required the parties to submit to jurisdiction in Texas. *Id.* at 18.[19] In addition, ITL asserts personal jurisdiction exists here because Agral previously filed two lawsuits in this court against Sharp that stem from the same transactions at issue in the present dispute. *Id.* at 24. Finally, ITL claims that in light of Agral's contacts with Texas, the assertion of personal jurisdiction will not offend fair play and substantial justice. *Id.* at 25.

Agral, on the other hand, contends that it lacks sufficient minimum contacts with Texas to be subject to specific jurisdiction. Motion to Dismiss at 3, 7. Although Agral admits that it filed two lawsuits in this district related to the arbitration proceedings, *id.* at 4–5, it argues that none of its subsequent activities surrounding the arbitral award has been directed at Texas. Reply to Dismiss at 2–6. Agral further disputes ITL's contention that ITL can enforce the jurisdictional terms of the promissory note and unconditional and continuing guaranties Agral entered into with NationsBank and that even if ITL could do so, those contracts "are a dead letter in light of the arbitral award and the release by Sharp (the other party to the arbitral award) of all claims against the Agral Companies." *Id.* at 2. Finally, Agral asserts that even if the requisite minimum contacts with Texas exist, the court should not exercise personal jurisdiction because it would offend traditional notions of fair play and substantial justice. Motion to Dismiss at 8–13.

Leaving aside the issue of whether ITL can assert the jurisdictional terms of the promissory note and unconditional and continuing guaranties, the court finds, based on the record before it, that Agral purposefully availed itself of the benefits and protections of this forum by instituting two suits in this court related to the arbitration proceedings. Therefore, Agral is subject to the personal jurisdiction of this court.

 For the court to properly assert specific personal jurisdiction over the Agral defendants, they must have "purposefully directed" their activities at the residents of the forum, and the litigation must result from alleged injuries that "arise out of or relate to" the defendants' activities directed at the forum. *Burger King*, 471 U.S. at 472, 105 S.Ct. 2174. Under Texas law, "[v]oluntarily filing a lawsuit in a jurisdiction is a purposeful availment of the jurisdiction's facilities and can subject a party to personal jurisdiction in another lawsuit when the lawsuits arise from the same general transaction." *Primera Vista S.P.R. de R.L. v. Banca Serfin, S.A. Institucion de Banca Multiple Grupo Financiero Serfin*, 974 S.W.2d 918, 926 (Tex.App.—El Paso 1998, no pet.) (cit-

---

**19.** ITL claims, "as assignee of the Arbitration Award which arose out of the enforcement of the [Promissory] Note, [it] may enforce the jurisdictional terms of the Note." Response to Dismiss at 18 n. 5.

ing *General Contracting & Trading Co. v. Interpole*, 940 F.2d 20, 22 (1st Cir.1991)); see also *PaineWebber Incorporated v. The Chase Manhattan Private Bank (Switzerland)*, 260 F.3d 453, 460 (5th Cir.2001) (observing that a party may submit to court's jurisdiction by commencing an action or "a related action in the very forum in which it is contesting personal jurisdiction").

In this instance, Agral brought two lawsuits in this district against Sharp after Sharp initiated arbitration proceedings with JAMS in Dallas, Texas to recover on Agral's defaulted promissory note, which ITL allegedly funded. Complaint ¶¶ 9–10. In Agral Suit 1, Agral Regiomontana sought to stay the arbitration proceedings before JAMS and compel arbitration before the AAA. Reply to Dismiss at 3. In Agral Suit 2, four of the five Agral defendants sought to compel the joinder of additional parties to the arbitration proceedings. *Id.* In that action, Agral also filed a usury claim against Sharp. *Id.* at 4. Ultimately, Agral's requests for affirmative relief were denied and both suits were dismissed. Motion to Dismiss at 5; Response to Dismiss at 4–5, 8 n. 4. Agral contends that it did not submit to the jurisdiction of this court by its conduct as a plaintiff in those two lawsuits. Reply to Dismiss at 3–4. In response, ITL argues that by filing both suits against Sharp, Agral purposefully availed itself of the protections afforded by Texas courts and that it was therefore reasonable for Agral to foresee being haled into this forum. Response to Dismiss at 3–4.

After reviewing the record in this case, the court is persuaded by ITL's claim that Agral's lawsuits against Sharp are suffi-ciently related to ITL's present action against Agral to enforce payment of the arbitration award. This conclusion is further supported by the fact that after ITL filed suit against Sharp in this district, Judge Lynn ordered the Special Master for the Sharp Estate to return custody of the $11 million arbitration award to ITL. Complaint ¶ 12; *see also* Response to Dismiss at 9. While the court is mindful that a party does not necessarily waive its jurisdictional objections by filing suit, Agral did more than simply make a limited appearance to contest certain aspects of the arbitration proceedings with Sharp. Specifically, Agral filed a complaint with a usury claim against Sharp. *See* Docket Sheet for *Embotelladora Agral, et al. v. Sharp Capital Inc., et al.*, No. 96–CV–02862–P. In sum, this case (*i.e.*, ITL's suit against Agral to enforce the arbitration award) appears to arise out of the same nucleus of operative facts underlying the claims Agral previously made against Sharp in this district.

The court also concludes that there is no unfairness in subjecting Agral to the jurisdiction of this court. See *Burger King*, 471 U.S. at 476, 105 S.Ct. 2174. First, Agral has previously litigated here. Second, although both parties are foreign to this forum, ITL has made a credible showing that Texas has an interest in adjudicating this dispute. ITL has alleged that it invested a substantial sum of money with Sharp, a Texas corporation, which then invested the money with Agral through NationsBank in Dallas, Texas. Response to Dismiss at 26 (ITL "obviously has a strong interest in obtaining relief in the state in which it made the investment and in which the investment was lost.").[20]

---

**20.** Agral disputes this contention and argues that Texas has no interest in resolving the issues raised by ITL's complaint because the confirmation and enforcement of the arbitration award has "nothing to do with Texas law governing investments with Texas companies or relationships between debtors and creditors in the state." Reply to Dismiss at 5. At this point, however, the court rejects Agral's argument and finds that ITL has made the necessary showing of Texas' interest in this

Third, as ITL notes, the burden on Agral to defend in Texas is the same as the burden on ITL to bring suit against Agral in Mexico. *Id.* ITL should be entitled to maintain this action in this forum since Texas is where ITL's alleged injury was sustained. Accordingly, the court denies Agral's motion to dismiss for lack of personal jurisdiction.

### C. *International Comity*

Agral's response to ITL's supplemental brief appears to concede that dismissal on the grounds of international comity is no longer viable in light of the termination of the bankruptcy proceedings in Mexico involving four of the five Agral defendants. Response to Supplemental at 1–2 ("But the Agral Companies have preserved their objections to personal jurisdiction under Rule 12(h), and the end of the bankruptcy does not affect the remaining grounds in the motion to dismiss."). In place of that argument, Agral repeats its claim that dismissal is warranted for lack of personal jurisdiction and insufficient service of process. *Id.* at 3. In addition, Agral raises what appears to be a new argument for dismissal: this court does not have subject matter jurisdiction because ITL lacks standing to sue on the arbitral award. *Id.* at 4. In support of this claim, Agral cites various exhibits attached to previous filings with this court, which allegedly show that ITL was not a party to the arbitral award and that it does not currently own an interest in the award. *Id.* at 4–6 and accompanying footnotes. While this argument may have merit, the court will not consider this ground for dismissal because it is not properly before the court. In order for the court to have considered dismissal on the basis of lack of subject matter jurisdiction, Agral should have filed a separate motion instead of including it

within its response to ITL's supplemental brief. In the interest of fairness, ITL should be given the opportunity to respond to this ground for dismissal since it was not raised in Agral's motion to dismiss. *See generally* Motion to Dismiss. This ruling does not prejudice Agral from filing a separate motion to dismiss for lack of subject matter jurisdiction, which can be raised at any time and is never waived. However, if Agral wishes to pursue this ground of relief, it shall file a separate motion asserting it within thirty days of this date.

### III. *CONCLUSION*

For the foregoing reasons, Agral's motion to dismiss is **DENIED**. The motions to strike filed by all parties are **DENIED** as moot. The service of process on Agral Regiomontana, Agral de Laguna, and Agral Comisionista is **QUASHED**. ITL will be given sixty (60) days from the date of this order to effect valid service of process on these defendants. The court does not rule in this memorandum order on Agral's contention that the court lacks subject matter jurisdiction. If Agral wishes to pursue that contention, it shall do so by separate motion filed within thirty days of this date.

**SO ORDERED.**

---

dispute. *Wilson,* 20 F.3d at 648 (the plaintiff may meet its burden of establishing personal jurisdiction over the nonresident defendant by presenting a *prima facie* case for personal jurisdiction).