# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-14-00181-CV

Furie Petroleum Co., LLC; Furie Operating Alaska, LLC;
Cornucopia Oil & Gas Co., LLC f/k/a Escopeta Oil of Alaska; and Kay Rieck, Appellants

v.

Ben Barnes Group, L.P., Appellee

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
NO. D-1-GN-13-003500, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Ben Barnes Group, L.P. (BBG) sued Furie Petroleum Co., LLC; Furie Operating Alaska, LLC; Corncopia Oil & Gas Co., LLC; and Kay Rieck for claims arising from a contract for professional services. Rieck, a German citizen residing in Dubai, then filed a special appearance, which the trial court denied. In this interlocutory appeal, Rieck contends that the trial court erred in denying his special appearance because, according to Rieck, any and all actions he took were solely in his capacity as a corporate officer and because a lawsuit he previously filed in Texas is unrelated to the instant suit.[1] *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(7); Tex. R. Civ. P. 120a. We conclude that the undisputed allegations and the factual findings supported by the evidence are

---

[1] Although the notice of appeal was filed by the defendants jointly, the special appearance that is the subject of this appeal was filed solely by Rieck and concerns only the trial court's exercise of personal jurisdiction over him personally. Therefore, for purposes of this opinion, we will refer to Rieck as if he were the only appellant.

insufficient to confer either specific or general jurisdiction over Rieck in his individual capacity, and therefore we reverse the trial court's order.

## BACKGROUND

The dispute underlying this appeal arises from an alleged oral contract for professional services that, according to BBG, was formed as a result of a telephone conference in April 2011. BBG filed suit against Furie Petroleum, LLC; Furie Operating Alaska, LLC; Cornucopia Oil & Gas Co. (collectively, the "Furie Entities"); and Kay Rieck, a German national residing in Dubai and the sole member and manager of Furie Petroleum. In its petition, BBG alleged that "the Defendants all contracted with BBG for assistance in obtaining governmental permissions to relocate an offshore oil rig and explore for natural gas and oil in Cook Inlet, Alaska." BBG brought a claim for breach of contract and an alternative claim for quantum meruit, alleging that BBG had fully performed but had not been compensated for its services. BBG later amended its petition, adding allegations that "the Defendants have perpetrated a fraud against BBG" by promising a future fee for BBG services that they never intended to pay.

BBG's petition also included a statement regarding its claim of personal jurisdiction over Rieck. Specifically, BBG alleged the following:

> The Court has jurisdiction over Rieck because he is the manager and owner of Furie Operating and the owner of Cornucopia, all of which are Texas limited liability companies. The Court also has jurisdiction over Rieck because he regularly does business in Travis County and other counties throughout Texas. Rieck has also availed himself of the courts of Texas by having filed a suit styled Cause No. 12-CV-0597, *Escopeta Oil of Alaska, LLC, v. WTF Distribution Trust*, in the District Court of Galveston, 56th Judicial District ("the Galveston lawsuit"), in which he, Cornucopia, Furie Operating, and Furie Petroleum are plaintiffs, is factually related to this case,

2

and in which he subpoenaed BBG. Rieck also owns property in Texas and regularly travels to Texas.

Rieck filed a special appearance denying BBG's stated factual and legal basis for the assertion of personal jurisdiction over him. Rieck challenged the trial court's exercise of personal jurisdiction over him as an individual because, according to Rieck, all his contacts with the state were performed in his corporate capacity as a representative of the Furie Entities. Rieck's special appearance was supported by his own affidavit, in which he testified, in relevant part, as follows:

1.      I am a German national resident in Dubai. I do not live in Texas or maintain a residence in Texas, nor have I ever done so. I do not own or lease any real or personal property in Texas, nor have I ever done so. I do not maintain an office, a place of business, or have any other physical presence in Texas. I do not maintain a bank account in Texas. I do not pay, nor have I ever been required to pay, taxes to the State of Texas, or any municipality or local government within the State of Texas. Any contacts I may have had with the State of Texas were in my capacity as a company representative or agent acting on behalf of the [Furie Entities].

2.      . . . Any act alleged to have been taken by me in connection with the contract in question, which is not admitted, would have been done wholly in my capacity as a corporate representative acting on behalf of the Furie Entities, and not in my individual capacity. I have never had any dealings with [BBG] as an individual. I am not a party to any alleged agreement in my individual capacity.

3.      In 2012, I was a party to a lawsuit in Galveston. My involvement in that case was in furtherance of my fiduciary duty to Escopeta and other Furie Entities. The purpose of the suit was to seek recovery of assets that had been wrongfully taken from the various Furie Entities. I made no personal recovery in that case.

At the hearing on the special appearance, BBG introduced a copy of the plaintiffs' fifth amended petition in the Galveston lawsuit, a deposition subpoena served in the Galveston

3

lawsuit requiring BBG to produce documents, and the Furie Entities' first request for production to BBG in this lawsuit. BBG argued that this evidence showed that in the Galveston lawsuit, Rieck had personally sued Ed Oliver, a Texas attorney, for legal malpractice and breach of fiduciary duty in connection with Oliver's conduct related to Furie's Alaskan leases and that Rieck and his co-plaintiffs had sought documents from BBG in the Galveston lawsuit that the Furie Entities had also sought in the instant suit. Finally, BBG argued that the lawsuits were factually related and that, as a result, the fact that Rieck had filed a lawsuit in a Texas court sufficiently demonstrated that Rieck had purposefully availed himself of the benefits and advantages of conducting business in Texas.

The trial court denied the special appearance, and upon the request of Rieck, issued findings of fact and conclusions of law concluding that both general and specific jurisdiction could be exercised over Rieck. This appeal followed.

## STANDARD OF REVIEW

Under the Texas long-arm statute, the plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the personal jurisdiction of a Texas court. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). When this initial burden is met, the burden shifts to the nonresident to negate all bases of personal jurisdiction asserted by the plaintiff. *Id*. A defendant may negate jurisdiction on a legal basis by showing that even if the plaintiff's allegations are true, they do not establish jurisdiction. *Kelly v. General Interior Constr., Inc.*, 301 S.W.3d 653, 659 (Tex. 2010). A defendant may also negate jurisdiction on a factual basis by introducing evidence that rebuts the allegations in the pleadings. *Id*. Only relevant jurisdictional

4

facts, rather than the ultimate merits of the case, should be considered in deciding the issue of jurisdiction. *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 156 (Tex. 2013).

The determination of whether a court can exercise personal jurisdiction over a defendant is ultimately a question of law that we review de novo. *Id.* at 150. However, when a trial court issues findings of fact and conclusions of law, we may review the fact findings for both legal and factual sufficiency. *See BMC Sofware*, 83 S.W.3d at 794. Once it is determined that the trial court's findings are supported by sufficient evidence, or if the material facts are undisputed, whether those facts negate all bases for personal jurisdiction is a question of law. *See id*.

**BACKGROUND LAW**

Texas courts may exercise jurisdiction over a nonresident defendant if (1) the Texas long-arm statute authorizes the exercise of jurisdiction and (2) the exercise of jurisdiction is consistent with federal and state constitutional guarantees of due process. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007); *see* Tex. Civ. Prac. & Rem. Code § 17.042 (Texas long-arm statute). The Texas long-arm statute allows Texas courts to exercise personal jurisdiction "as far as the federal constitutional requirements of due process will permit." *BMC Software*, 83 S.W.3d at 795. Consequently, "the requirements of the Texas long-arm statute are satisfied if an assertion of jurisdiction accords with federal due-process limitations." *Moki Mac River Expeditions*, 221 S.W.3d at 575.

The exercise of jurisdiction over a nonresident comports with federal due process when (1) the nonresident has minimum contacts with the forum state and (2) asserting jurisdiction complies with traditional notions of fair play and substantial justice. *Moncrief Oil Int'l*, 414 S.W.3d

5

at 150; *see International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). "A defendant establishes minimum contacts with a state when [he] 'purposefully avails [himself] of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'" *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex. 2009) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

A nonresident defendant's contacts with the forum state can give rise to either specific or general jurisdiction. *BMC Software*, 83 S.W.3d at 795. General jurisdiction exists when the defendant has made continuous and systematic contacts, such that the forum may exercise jurisdiction over the defendant even if the alleged liability does not arise from or relate to those contacts. *Id*. at 796. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, ___ U.S. ___, 131 S. Ct. 2846, 2853-54 (2011).

In contrast, specific jurisdiction exists only if the alleged liability arises out of or is related to the defendant's contact with the forum. *Moki Mac River Expeditions*, 221 S.W.3d at 576. When specific jurisdiction is alleged, the focus of the minimum-contacts analysis is the relationship among the defendant, the forum, and the litigation. *Id*. at 575-76 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). If the court concludes that a nonresident defendant has minimum contacts with Texas by purposefully availing himself of the privilege of conducting activities here, the court must then address whether the defendant's alleged liability arises out of or is related to those contacts. *See id*. at 579 ("For specific-jurisdiction purposes, purposeful

6

availment has no jurisdictional relevance unless the defendant's liability arises from or relates to the forum contacts.").

**ANALYSIS**

Asserting that the trial court erred in denying his special appearance, Rieck has raised five issues on appeal. In general, Rieck contends that the trial court erred in overruling his objections to BBG's late response and evidence attached to that response, that several of the trial court's fact findings related to jurisdiction are not supported by the pleadings or the evidence, and that the trial court's conclusions with respect to jurisdiction are legally incorrect.[2]

**Specific Jurisdiction**

*Breach-of-contract claim*

We first consider Rieck's assertion that several of the trial court's findings of fact are not supported by sufficient evidence. Rieck challenges the trial court's findings of fact suggesting (1) that Rieck, in his individual capacity, conducted any business in Texas; (2) that Rieck, in his individual capacity, negotiated and entered into a contract by and through his agent, Oliver; and

---

[2] In his first issue on appeal, Rieck contends that the trial court erred in overruling his objections to BBG's late-filed response and to the affidavit of Kent Caperton, submitted by BBG in support of its response. In his second issue, Rieck contends that the trial court erred in denying his special appearance because BBG failed to plead sufficient jurisdictional facts that would bring Rieck within the reach of the Texas long-arm statute. In his third issue, Rieck argues that the trial court erred in denying his special appearance because the evidence is insufficient to support several of the trial court's findings suggesting that Rieck conducted business in Texas in his personal capacity, including findings that Oliver was acting on behalf of Rieck personally when he negotiated the alleged verbal contract. In his fourth issue, Rieck challenges the trial court's legal conclusion that Rieck's contacts satisfy due-process requirements. Finally, in his fifth issue, he argues that the trial court erred in concluding that it could exercise personal jurisdiction over Rieck based on his previous appearance in the Galveston lawsuit.

7

(3) that BBG worked on Rick's behalf, in his individual capacity.[3] Rieck contends that his affidavit, submitted in support of his special appearance, establishes that any business conducted by him in Texas was conducted purely in his capacity as a corporate representative. Moreover, Rieck asserts that BBG failed to make any allegations or present any evidence suggesting that Rieck conducted any business in Texas in his individual capacity.

In response, BBG argues that there is sufficient evidence to support the trial court's findings suggesting that Rieck, personally, entered into a contract with BBG. Further, BBG contends that its claims for breach of contract and quantum meruit are related to "Rieck's act in soliciting and engaging BBG's business and entering into a contract requiring his performance" and that its "fraud cause of action is related to Rieck's inducement of BBG to enter into the contract and perform it."

A nonresident corporate officer or employee is generally protected from the exercise of jurisdiction when all of that individual's contacts with the forum state were made on behalf of his employer. *See Camac v. Dontos*, 390 S.W.3d 398, 411 (Tex. App.—Dallas 2012, no pet.) ("The fiduciary shield doctrine is based on the principle that 'jurisdiction over an individual cannot be based on jurisdiction over a corporation.'" (quoting *Nichols v. Tseng Hsiang Lin*, 282 S.W.3d 743, 750 (Tex. App.—Dallas 2009, no pet.))); *Leesboro Corp. v. Hendrickson*, 322 S.W.3d 922, 929 (Tex.

---

[3] Specifically, Rieck challenges the sufficiency of the evidence supporting the following findings of fact:

(13) [Rieck] conducts business in Texas and has a lawyer in Texas;
. . .
(17) [Rieck's] attorney, Ed Oliver contacted [BBG] in Texas to negotiate the contract that forms the basis of the instant suit;
. . .
(19) Over the course of several months, [BBG] worked on Rieck's behalf.

8

App.—Austin 2010, no pet.) ("[A] corporate representative's non-tortious acts on the corporation's behalf do not constitute a contact for purposes of personal jurisdiction over the corporate representative[.]"); *see also Atiq v. CoTechno Grp., Inc.*, No. 03-13-00762-CV, 2015 WL 4195051, at *4 (Tex. App.—Austin July 9, 2015, no pet. h.) (mem. op.). Similarly, "[a] long-standing principle of Texas law is that ordinarily a corporate agent is not personally liable in an action on a contract made by him for the benefit of his corporate principal." *Stull v. LaPlant*, 411 S.W.3d 129, 134 (Tex. App.—Dallas 2013, no pet.). Therefore, when an agent negotiates a contract for its principal in Texas, it is the principal who does business in this state, not the agent. *Id.* at 137; *see Atiq*, 2015 WL 4195051, at *4.

In this case, BBG did not specifically allege that Rieck negotiated or entered into a contract with BBG in his personal capacity, either directly or through an agent. Moreover, Rieck's testimony in his affidavit constitutes evidence that any actions he took with regard to BBG were solely in his corporate capacity as an officer of Furie Petroleum, and the trial court did not make any findings suggesting that Rieck negotiated directly with BBG in his individual capacity. Instead, the trial court found that "Rieck's attorney, Ed Oliver, contacted [BBG] in Texas to negotiate the contract [with BBG]." BBG suggests that this finding constitutes a finding that Oliver was acting on behalf of Rieck personally. BBG points to Rieck's pleadings in the Galveston lawsuit as evidence that Oliver, general counsel for Furie Petroleum, also acted as Rieck's personal attorney during the relevant time period, and consequently, Oliver's conduct in negotiating and finalizing the BBG contract is fairly imputed to Rieck in his individual capacity.

Even if we were to infer from the pleadings in the Galveston lawsuit that Oliver has acted as Rieck's personal attorney on at least some matters, we still could not conclude that the

9

allegations and evidence support a finding that Rieck, through Oliver, negotiated and entered into the alleged contract with BBG in his individual capacity. First, BBG did not specifically allege that Oliver contacted BBG in Texas to negotiate the alleged BBG contract or that Oliver represented Rieck personally in those negotiations. Moreover, BBG failed to present any competent evidence that would support a finding that "Oliver contacted BBG to negotiate the contract" on behalf of Rieck personally and not on behalf of the Furie Entities. Evidence that Oliver acted on behalf of Rieck personally on some matters is not evidence that Oliver necessarily acted on behalf of Rieck personally on the matter at issue in this suit.

Upon reviewing the special-appearance record, we conclude that there is no evidence supporting the trial court's findings to the extent they suggest that Rieck negotiated or entered into a contract with BBG in his individual capacity and not as a representative of the Furie Entities. As a result, the trial court erred in concluding that Rieck had contacts with Texas sufficient to support the exercise of specific jurisdiction over BBG's claims against him for breach of contract and quantum meruit. *See Stull*, 411 S.W.3d at 138 (concluding that trial court did not have specific jurisdiction over breach-of-contract claim against individuals whose sole contacts were in their capacities as corporate agents).

### Fraud claim

Next, we consider BBG's argument that the trial court was correct in concluding that it had specific jurisdiction over its fraud claim against Rieck because "the suit arises from the contract and promises Rieck made in Texas."

10

An officer's action performed in his corporate capacity may subject him to personal jurisdiction and liability in his individual capacity if his actions were tortious or fraudulent. *Niehaus v. Cedar Bridge, Inc.*, 208 S.W.3d 575, 581 (Tex. App.—Austin 2006, no pet.). However, simply alleging that a defendant committed a tort in Texas, standing alone, is not sufficient to support the exercise of personal jurisdiction. *Id.*; *see Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 792 (Tex. 2005) (explaining that existence of specific jurisdiction depends on contacts themselves and not whether contacts were tortious). Instead, allegations of tortious conduct will support the exercise of specific jurisdiction only when the corporate officer's contacts with the forum demonstrate purposeful availment and the alleged tort arises from or relates to these contacts. *See Niehaus*, 208 S.W.3d at 581; *see also Siskind v. The Villa Found. for Educ., Inc.*, 642 S.W.2d 434, 438 (Tex. 1982) (explaining that trial court lacked sufficient contacts with individuals where neither specific acts of tortious conduct attributable to individuals nor that corporation acted as alter ego were alleged). "[I]t is 'the defendant's conduct and connection with the forum' that are critical." *Michiana*, 168 S.W.3d at 789 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).

In its petition, BBG asserts that the "Defendants have perpetrated a fraud against BBG" because "they represented that they would pay BBG a success fee of $1,000,000" with no intention of paying. According to BBG, this claim of fraud implicates Rieck individually and arises from one specific contact—that Rieck participated in the negotiation and formation of the contract with BBG in Texas by telephone. However, BBG's pleadings do not allege that Rieck himself participated in any negotiations or that Rieck, in the course of those negotiations, represented that BBG would pay a $1,000,000 success fee. *See Kelly*, 301 S.W.3d at 659-60 (concluding that

11

pleadings and evidence of fraudulent acts were insufficient because they did not allege that fraudulent acts occurred in Texas). As a result, BBG failed to meet its initial burden of pleading allegations sufficient to confer specific jurisdiction over Rieck on its claim of fraud. *See Retamco Operating*, 278 S.W.3d at 337. Because the only contact related to BBG's claim of fraud against Rieck is not adequately pleaded, we conclude that the trial court erred in determining that Rieck had sufficient minimum contacts with Texas with respect to this claim.

Nevertheless, even if the pleadings and evidence were sufficient to establish conclusively that Rieck made a representation during the course of contract negotiations with BBG, we nevertheless would conclude that this single contact is insufficient to support the exercise of specific jurisdiction over Rieck individually with respect to BBG's claim of fraud.[4] In *Michiana*, the Texas Supreme Court was presented with the question of whether a nonresident's alleged misrepresentation in a telephone call with a Texas resident was sufficient to confer personal jurisdiction over the nonresident in a Texas court. 168 S.W.3d at 783. In concluding that it was not sufficient, the court recognized that entering into a single contract with a Texas resident will not support the exercise of personal jurisdiction when it involves a single contact taking place outside the forum state. *Id*. at 786. In addition, the mere fact that a nonresident could foresee that his out-of-state actions would cause injury in Texas is not sufficient to hale the nonresident into Texas to litigate that injury. *Niehaus*, 208 S.W.3d at 581 (citing *Michiana*, 168 S.W.3d at 789-90). As previously discussed, the record shows that Rieck's actions with regard to BBG were solely in his

---

[4] The trial court did not make any findings of fact suggesting that Rieck directly engaged in negotiations with BBG or that Rieck personally represented that the Furie Entities would pay a success fee.

capacity as a corporate officer. Based on the supreme court's holding in *Michiana*, we conclude that any representation made by Rieck during the course of contract negotiations on behalf of the Furie Entities, standing alone, does not establish purposeful availment by Rieck.

**Galveston Lawsuit**

Next, Rieck asserts that the trial court erred in concluding that it had specific jurisdiction over him in his individual capacity as a result of his status as a plaintiff in the Galveston suit. At least one Texas court has recognized that "voluntarily filing a lawsuit in a jurisdiction is purposeful availment of the jurisdiction's facilities and can subject a party to personal jurisdiction in another lawsuit when the lawsuits arise from the same general transaction." *Primera Vista S.P.R. de R.L. v. Banca Serfin, SA*, 974 S.W.2d 918, 927 (Tex. App.—El Paso 1998, no pet.). Similarly, federal courts have recognized that a plaintiff, by filing suit, surrenders "any jurisdictional objections . . . in consequence of the same transaction or arising out of the same nucleus of operative facts." *General Contracting & Trading Co. v. Interpole*, 940 F.2d 20, 22 (1st Cir. 1991).

Here, the trial court concluded that the Galveston suit was "a substantially similar suit which involved several of the same facts, evidence, and parties as the instant suit, and in which Rieck subpoenaed [BBG] for the same evidence as in the instant suit." In support of this conclusion the trial court made the following relevant finding of fact:

> In the Galveston lawsuit, Kay Rieck asserted legal malpractice and breach of fiduciary duty claims against his attorney, Ed Oliver, arising out of Mr. Oliver's alleged self-dealing in relation to the same Alaskan oil and gas leases at issue in the instant case. [The Furie Entities] were all parties in both the Galveston suit and the instant suit. The Galveston suit also involved the same time period at issue in this suit, in particular the 2011 time frame when the contract between [BBG] was

13

negotiated, formed, performed, and breached. During the course of the Galveston lawsuit, Kay Rieck subpoenaed [BBG] for its file and took [BBG's] deposition on written questions. The same documents produced by [BBG] in the Galveston suit were again requested and produced in the instant suit.

Rieck does not dispute that he and the Furie Entities participated as plaintiffs in the Galveston lawsuit, and he does not contend that the Galveston lawsuit is completely unrelated to the instant suit. Instead, Rieck acknowledges that he subpoenaed BBG's file in the Galveston lawsuit and that many of these same documents were also requested in this suit. In addition, Rieck acknowledges (1) that the current lawsuit concerns a claim that Oliver participated in the negotiation of a contract with BBG to perform lobbying activities related to the transport of the Spartan 151 drilling rig to Alaska, and (2) that the Galveston lawsuit concerns a claim that Oliver unlawfully assigned himself interests in Alaskan oil and gas leases, the location where Spartan 151 was to drill. Nevertheless, Rieck asserts that the Galveston lawsuit against Oliver and the instant lawsuit brought by BBG do not "arise from the same general transaction" because Rieck's breach-of-fiduciary-duty claims against Oliver did not concern any action or inaction by Oliver in connection with BBG. In other words, Rieck challenges the trial court's conclusion that the Galveston lawsuit is a "substantially similar suit" such that it would support the exercise of specific jurisdiction over him.

Our review of the plaintiffs' pleadings in the Galveston lawsuit reveals that Rieck and the Furie Entities alleged that Oliver, as their attorney, engaged in a course of self-dealing by wrongfully procuring for himself an interest in the Alaskan oil and gas leases where the Spartan 151 oil rig was to drill. Rieck and the Furie Entities did not make any allegations in the Galveston suit concerning the work performed by BBG or payments made to BBG, and in this lawsuit, BBG has

14

not made any claim regarding any interest in the oil and gas leases in Alaska or any misconduct on the part of Oliver related to its contract. And, although the record shows that the plaintiffs in the Galveston suit sought and obtained BBG's file related to work performed by BBG on behalf of the Furie Entities, neither BBG nor the trial court in its findings of fact explains the relevancy of that discovery to any issues presented in the Galveston suit. In short, although BBG asserts that the "two lawsuits are factually connected," BBG has failed to establish what those common facts are or how they relate to the various claims in the two lawsuits. Therefore, although both lawsuits touch on the fact that the Furie Entities sought to engage in drilling on leases located in Alaska, we cannot conclude that the lawsuits arise from the same nucleus of operative facts. *Cf. International Transactions, Ltd. v. Embotelladora Agral Regionmontana SA de CV*, 277 F. Supp. 2d 654, 668 (N.D. Tex. 2002) (concluding that personal jurisdiction existed where plaintiff's claim against nonresident defendant arose out of "the same nucleus of operative facts" underlying claims brought by defendant in previous suit brought in forum). That is, without more, we cannot conclude that Rieck's alleged conduct in this suit arises out of or is related to the Galveston lawsuit such that the exercise of specific jurisdiction over Rieck would comport with due process.

There can be no dispute that by participating as a plaintiff in the Galveston lawsuit Rieck "purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *See Retamco Operating*, 278 S.W.3d at 338. However, the trial court's findings of fact along with the undisputed evidence before the trial court fail to support the conclusion that the lawsuits are sufficiently factually related such that BBG's current lawsuit "arises out of or relates to" Rieck's activities in the Galveston suit.

15

**General Jurisdiction**

Finally, we consider whether the trial court erred in concluding that it could exercise general jurisdiction over Rieck in his individual capacity. Specifically, the trial court concluded that Rieck "has had continuing and systematic contact with Texas . . . because: he is the sole owner, shareholder, manager, and member of Furie Petroleum, a Texas company; he owns property in Texas, and has owned property in Texas in the past, and for at least five years; he travels to Texas regularly and at least annually; he conducts business in Texas and has a lawyer in Texas; he owns interests in a business entity that owns property in Texas." In addition, the trial court concluded that the exercise of general jurisdiction was warranted because "Rieck purposefully availed himself of the Texas courts in the Galveston suit."

"For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear Dunlop Tires Operations, S.A.*, ___ U.S. ___, 131 S. Ct. at 2853-54. Because general jurisdiction involves a court's ability to exercise jurisdiction over a nonresident based on any claim, including claims unrelated to the defendant's contacts, it requires a "'more demanding minimum contacts analysis.'" *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 175-76 (Tex. 2007) (quoting *CSR Ltd. v. Link*, 925 S.W.2d 591, 595 (Tex. 1996)).

Here, the undisputed evidence establishes that Rieck resides in Dubai and, as previously discussed, that all of Rieck's travel to and business in Texas is solely in his capacity as a corporate representative of the Furie Entities. In addition, while the trial court found that Rieck "owns property in Texas," there is no indication from the record of what this property is, except that

16

it is not real property. Considering only those contacts that are fairly attributable to Rieck in his personal capacity—including that Rieck had a lawyer in Texas, that he filed a lawsuit against his lawyer in Texas, and that he owns an interest in a Texas business entity—we conclude that BBG has failed to establish that Rieck has longstanding and substantial activities in Texas such that he is "essentially at home in [Texas]." *See Goodyear Dunlop Tires Operations, S.A.*, ___ U.S. ___, 131 S. Ct. at 2851. The trial court erred to the extent it concluded that it could exercise general jurisdiction over Rieck.[5]

## CONCLUSION

Because the trial court lacked personal jurisdiction, we reverse its order denying Rieck's special appearance and render judgment dismissing BBG's claims against him.

_____

Scott K. Field, Justice

Before Justice Puryear, Pemberton and Field

Filed:  October 23, 2015

Reversed and Rendered

---

[5] Because we conclude, based on the record before us, that the trial court erred in concluding that it had personal jurisdiction over Rieck in his personal capacity, we need not address Rieck's arguments concerning the trial court's consideration of certain documents filed by BBG in response to Rieck's special appearance.

17